In re McCORHILL PUBLISHING, INC., Debtor.

In re NEW CASTLE ASSOCIATES, Debtor.

KRAUS–THOMSON ORGANIZATION, LTD., Plaintiff,

v.

McCORHILL PUBLISHING, INC., Debtor, Harvey S. Barr, as Trustee for McCorhill Publishing, Inc., and New Castle Associates, Defendants.

Bankruptcy Nos. 87 B 20104, 88 B 20122.
Adv. No. 88 ADV 6061.

United States Bankruptcy Court, S.D. New York.

Sept. 29, 1988.

Bleakley Platt & Schmidt, McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, N.Y., for McCorhill Pub., Inc.

Ernest H. Hammer, New York City, for New Castle Associates.

**224**

Kissam & Halpin, New York City, for plaintiff.

Harvey S. Barr, Spring Valley, N.Y., Trustee.

## DECISION ON ORDER TO SHOW CAUSE WHY EXAMINATION SHOULD NOT BE PRECLUDED

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Kraus–Thomson Organization ("KTO"), a creditor of the debtor, McCorhill Publishing, Inc. ("McCorhill") for a debt arising out of KTO's sale of a reprint and publishing business to the debtor, seeks a protective order pursuant to Bankruptcy Rule 7026 and Rule 26(c) of the Federal Rules of Civil Procedure. KTO wishes to preclude the debtor, McCorhill, from examining KTO's chairman of the board, Hans Peter Kraus, based on reasons of mental and physical infirmities of Mr. Kraus. In the adversary proceeding in which Mr. Kraus' deposition is sought, the debtor has counterclaimed for damages against KTO. One of the debtor's arguments is that KTO violated various covenants of sale and improperly engaged in competition with the debtor's business involving antiquarian books thereby damaging the debtor's business interests.

KTO seeks to exempt Mr. Kraus from a pre-trial deposition on the ground that Mr. Kraus, who is 80 years of age, suffers from several degenerative diseases including an Alzheimer's-type disease, and congenital heart, renal and arthritis conditions which confine him to a wheelchair.

During the course of a prepetition lawsuit commenced by KTO in the Supreme Court of the State of New York, County of Westchester, Dr. William J. Athos, Mr. Kraus' attending physician submitted an affidavit sworn to March 6, 1987, in support of KTO's motion to preclude Mr. Kraus' deposition. In this affidavit, Dr. Athos explained that Mr. Kraus' physical and mental condition had deteriorated rapidly and that Mr. Kraus was unable to function independently in his activities of daily living. Dr. Athos referred to Mr. Kraus' severe degenerative arthritis, his cortical atrophy of the brain and his renal disease. Based on these conditions Dr. Athos said that

> it is my opinion that Mr. Kraus would be unable to accurately recall events and give reliable testimony. Moreover, in view of his poor physical condition, any attempt to elicit such testimony could have a deleterious affect on his health.

Notwithstanding this report the state court judge ruled on June 3, 1987 that Mr. Kraus should submit to a pre-trial oral deposition because "no genuine proof has been submitted that a pre-trial examination of Mr. Kraus will constitute a direct threat to his life or medical well being or that he is physically impaired to such a degree that he is not capable of understanding the nature of questions asked of him and giving a coherent response thereto."

With regard to the instant motion, Dr. Athos testified in this court that Mr. Kraus is no longer able to process information due to his progressively worsened senile dementia and Alzheimer's-type disease. Dr. Athos testified that Mr. Kraus had reached the point where he could no longer be brought to his office because it was difficult to remove Mr. Kraus from the wheelchair for examination. More importantly, Dr. Athos testified that Mr. Kraus' had suffered heart failure in June of 1987 when he was taken to Switzerland. This heart failure occurred after the decision by the State Court permitting McCorhill to depose Mr. Kraus. This condition left him in a state of border-line compensation as to his heart condition. Dr. Athos said that a deposition of Mr. Kraus could cause further heart failure which could threaten Mr. Kraus' life. This issue as to Mr. Kraus' heart was not discussed by the state court judge because this condition developed after the judge's ruling.

Although Dr. Athos testified that Mr. Kraus has now reached a vegetative state, this condition only bears on his competency and not his health. Therefore, the ruling by the state court judge in June of 1987 that there was no genuine proof that Mr. Kraus was not capable of understanding the nature of questions asked of him, is not decisive as to Mr. Kraus' health. Dr. Athos has now testified without contradiction

that a pre-trial oral deposition of Mr. Kraus would constitute a direct threat to his life and could cause heart failure.

A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order. *See* 8 Wright & Miller, *Federal Practice and Procedure,* § 2037 (1986 Sup.); *CBS, Inc. v. Ahern,* 102 F.R.D. 820 (S.D.N.Y.1984). Manifestly, if an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order. *Walsh v. Pullman Co.,* 10 F.R.D. 77 (S.D.N.Y.1948). A letter submitted by a psychiatrist which briefly stated that the party to be deposed showed progressive deterioration in her mental state and that she was anxious and disorganized, was sufficient to sustain the party's initial burden for a brief stay of the deposition so as to allow time for the psychiatrist to be brought to court to testify with regard to the protective order that was sought. *Medlin v. Andrew,* 113 F.R.D. 650 (M.D.N.C.1987). In the instant case, Dr. Athos testified that the proposed oral deposition of Mr. Kraus could be injurious to Mr. Kraus' health. Not only is Mr. Kraus not able to process facts because of his dementia, but his heart may not withstand the agitation caused by the examination and cross-examination contemplated by the oral deposition. The debtor cross-examined Dr. Athos and could have also introduce contradictory evidence, if any. There was no evidence to rebut Dr. Athos' unequivocal testimony that an oral deposition of Mr. Kraus, even if taken at his home, could have deleterious consequences to his health and that he was physically incapable of furnishing any information.

This court is not prepared to assume the responsibility of subjecting Mr. Kraus to a life-threatening deposition simply on the statement of McCorhill's attorney that he has no intention of pressuring Mr. Kraus with questions if it appears that Mr. Kraus is incapable of furnishing any information. In the event that Mr. Kraus suffers a heart attack or other life-threatening seizure as a result of an oral deposition, no amount of subsequent apologies or statements of sorrow will compensate for the known risk, especially since the only medical testimony in this case reflects the fact that Mr. Kraus' life will be placed in jeopardy by exposing this infirm and senile 80 year old man to a pre-trial deposition. Mr. Kraus is in constant pain and has reached a vegetative state of senile dementia. Dr. Athos testified that during such a deposition Mr. Kraus' borderline compensation may be catapulted into heart failure as a result of the pain and aggravated state which Mr. Kraus achieves when he cannot remember incidents in his life. At this point in Mr. Kraus' life, the issue for the court is not his competency to testify, but his ability to survive an oral deposition.

Accordingly, KTO's motion for a protective order precluding the pre-trial oral deposition of Mr. Kraus is granted. McCorhill is free to obtain the information which it seeks from the officers and employees of KTO who have been actively involved in KTO's business as well as from its books and records, or from any other available source.

IT IS SO ORDERED.