**Linda BUCHER, Individually and as Next Friend of J.B., Plaintiff,**

v.

**RICHARDSON HOSPITAL AUTHORITY d/b/a Richardson Medical Center, et al., Defendants.**

**No. 3–94–CV–1264–R.**

United States District Court, N.D. Texas, Dallas Division.

Dec. 13, 1994.

---

**6.** *See, National Union Fire Insurance Company v. Murray Sheet Metal Company, Inc.,* 967 F.2d 980 (4th Cir.1992).

Barbara Elias–Perciful and Shirley Sutherland, Law Offices of Shirley Sutherland, Dallas, TX, for plaintiff.

Dwayne Hermes, Cowles & Thompson, Dallas, TX, for defendant Roy R. George.

Patrick C. Frank, Fiedler & Akin, P.C., Dallas, TX, for defendant Richardson Hosp. Authority.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Plaintiff has filed a motion to quash the deposition of J.B. and a motion for reconsideration in connection with a prior ruling made by the Court. These motions have been referred to United States Magistrate Judge Jeff Kaplan for determination pursuant to 28 U.S.C. § 636(b) and Local Rule 1.3.

### PROCEDURAL BACKGROUND

Plaintiff Linda Bucher has sued Defendants Richardson Medical Center and Roy Reed George for negligence and civil rights violations arising out the care and treatment of her daughter, J.B.[1] Plaintiff contends that Defendant George sexually abused J.B. while she was a patient at the adolescent care unit of Defendant RMC. The lawsuit is brought by Plaintiff Linda Bucher in her individual capacity and on behalf of her minor daughter.

The deposition of J.B. was originally noticed for September 23, 1994. The parties agreed to depose J.B. at the New Life Children's Treatment Center in Canyon Lake, Texas where she currently resides. Counsel

---

1. This lawsuit was originally filed in state court. The case was removed to federal court by Defendant RMC on June 17, 1994. Plaintiff did not file a motion to remand and does not contest the basis for removal jurisdiction.

for Defendant RMC flew to Austin, Texas for the deposition. He was to meet opposing counsel at the airport and ride together to the deposition site. However, the attorneys missed each other and the deposition never took place. The parties agreed to reset the deposition. A second notice was issued scheduling the deposition of J.B. for October 18, 1994 in Dallas, Texas.

Plaintiff Linda Bucher hired another attorney just prior to this deposition.[2] The new lawyer filed a motion to quash alleging that "J.B. is emotionally, psychologically and mentally incapable of giving a deposition." Plaintiff seeks an order postponing the deposition until such time as "J.B.'s treating therapists agree that she is capable of safely and competently undergoing the deposition process." The motion to quash was heard on October 31, 1994. Plaintiff did not call any witnesses or present any evidence. Instead, she relied on an affidavit and a letter from two of J.B.'s therapists. The Court refused to quash the deposition. However, the Court ruled that: (1) the deposition should be taken at the New Life Children's Treatment Center in the presence of J.B.'s mother and therapist; (2) the length of the deposition and scope of examination should be limited; and (3) Defendant George would not be allowed in the same room as the deponent.

Plaintiff filed a motion for reconsideration in order to present live testimony and offer additional evidence. The motion was heard on November 15–16, 1994. The Court heard testimony from three expert witnesses. Barbara Rila and Sidney Brooks testified for the plaintiff. Frank Trimboli testified for Defendant RMC. The Court took the motion under advisement and now issues this memorandum order.

### FACTS

J.B. is a 15–year–old female with a long history of sexual abuse. She was admitted to the adolescent care unit of Richardson Medical Center in 1992 for treatment of psycho-

logical problems related to this abuse. J.B. attended educational courses while she was hospitalized. These courses were taught by Roy Reed George. Plaintiff contends that George repeatedly raped and molested J.B. over a two month period in 1994. Defendants RMC and George deny these allegations. In any event, J.B. was subsequently moved to a residential treatment facility in Canyon Lake, Texas where she is undergoing intensive psychological treatment.

Barbara Rila is a psychologist who has treated J.B. for the past seven years. She testified that J.B. has been sexually abused by her birth family, adoptive father and a teenage babysitter. Dr. Rila participated in the decision to admit J.B. to Richardson Medical Center. She believes that J.B. was molested by George and said that other patients reported similar instances of abuse. Dr. Rila found J.B. in a fetal position on the day she reported the incident to hospital staff. She agreed with the decision to transfer J.B. to the New Life Children's Treatment Center. Dr. Rila talks with J.B. on the telephone once a month but has not seen her for ten months. She has not reviewed her medical records from New Life and has never visited J.B. at the facility.

Dr. Rila testified that J.B. suffers from post-traumatic stress disorder. She said that J.B. is in a critical stage of treatment and that the stress associated with a deposition may "derail" her progress. Specifically, Dr. Rila expressed concern that J.B. may be emotionally traumatized by being forced to talk about the events surrounding her abuse in an adversarial setting. She fears that this may overpower J.B.'s ability to cope with and manage stress. If her stress mechanism is overpowered, Dr. Rila said that J.B. may become more depressed and possibly suicidal.

Dr. Rila also testified that J.B. has a learning disability and a limited capacity to recall concrete events. This memory problem

2. Plaintiff was originally represented by Frank Jewell and Jewell & Associates. Shirley Sutherland was hired by plaintiff on October 14, 1994, four days before the scheduled deposition. Sutherland filed the motion to quash on October 18, 1994, but did not file a motion to substitute counsel until October 21, 1994. A third lawyer, Barbara J. Elias–Perciful, has now entered an appearance on behalf of plaintiff. Elias–Perciful has been designated as lead counsel and Sutherland will continue to serve as co-counsel.

could make it difficult for J.B. to provide reliable information. Dr. Rila said that the anxiety and frustration associated with the inability to answer questions at a deposition could exacerbate her psychological problems. She conduced that J.B. is "emotionally and psychologically incapable of giving a deposition at this time", and that "subjecting J.B. to a confrontational discussion of her abuse ... would traumatize her to the point of further harm and deterioration and endanger her psychological stability."

On cross-examination, Dr. Rila said that J.B. had discussed her sexual abuse allegations with several people in different settings. J.B. talked to the police, district attorney, and two lawyers in addition to her therapists. Dr. Rila also admitted that J.B. has a propensity for fantasy, distortion and fabrication. She was aware that J.B. had recanted her accusations against Roy Reed George. Dr. Rila explained that this recant occurred around the time the first deposition was aborted and served as a protection mechanism to get J.B. out of a highly stressful situation.

The Court also questioned Dr. Rila about possible procedures or safeguards that could be implemented to minimize the risk of harm during a deposition. Dr. Rila suggested that the deposition take place at the New Life Children's Treatment Center during the month of January 1995. J.B.'s mother and therapist should be present during this deposition, and all other participants should be excluded from the room. Dr. Rila said that George should not even be allowed on the premises. She recommended that the deposition be conducted during a set time frame and that the parties adhere to that schedule. This would give the proceeding some certainty and predictability. Dr. Rila said that, if possible, the questions should be submitted in writing or through a neutral third-party or "interpreter." She believes that this would enhance J.B.'s ability to give truthful answers. Dr. Rila thinks that J.B. may have difficulty understanding questions asked from a remote location over a closed circuit television. However, this would be less intrusive than having defense counsel present in the same room.

Frank Trimboli testified on behalf of the defendants. Dr. Trimboli is a clinical psychologist with twelve years experience in treating adolescent patients. He has never treated or examined J.B., but reviewed some of her records from Richardson Medical Center. Dr. Trimboli testified that J.B. is capable of giving a deposition in this case. He agreed that the process would be stressful and that some safeguards were needed. However, Dr. Trimboli believes that J.B. can talk about her allegations of sexual abuse because she has done so in therapy groups.

Plaintiff called Sidney Brooks as a rebuttal witness. Dr. Brooks is a licensed psychiatrist but has never examined or treated J.B. He reviewed some records from Richardson Medical Center and talked with one of J.B.'s former therapists. Dr. Brooks testified that J.B. has an impulsive control disorder and is a suicide risk if deposed. The risk level is directly related to the amount of stress associated with the deposition. Consequently, the risk decreases if the confrontational or adversarial nature of the process is minimized. Dr. Brooks suggested that questions be submitted to J.B. in writing or through a therapist acting as an interpreter. However, he said that there would be a "mild to moderate" decrease in risk if J.B. was questioned over a remote audio device or closed circuit television. Dr. Brooks testified that it was important to conduct the proceedings in a secure and supportive environment.

## MOTION TO QUASH

Plaintiff Linda Bucher contends that the deposition should be quashed in its entirety. She argues that the risk of physical and emotional harm to her daughter outweighs the utility of the process for the defendants. Plaintiff also asserts that J.B. is not competent to give deposition testimony because of her mental condition.

The defendants respond that there is a compelling need to depose J.B. They argue that she is a party plaintiff and the "most important witness" in this case. The defendants contend that this deposition is necessary because J.B. has given conflicting accounts of the incident and even recanted her accusations against Roy Reed George. They

point out that she has discussed the alleged abuse with police officers and lawyers outside of a therapeutic setting. Defense counsel seem to recognize the need for some procedural safeguards, but maintain that they should be allowed to personally examine J.B. until they receive satisfactory answers to their questions.

### 1. Legal Standard

■ A party seeking a protective order must show good cause and a specific need for protection. *Landry v. Air Line Pilots Association,* 901 F.2d 404, 435 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Harris v. Amoco Production Co.,* 768 F.2d 669, 684 (5th Cir.1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). "Good cause" exists when justice requires the protection of "a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." FED.R.CIV.P. 26(c); *Landry,* 901 F.2d at 435. The court must balance the competing interests of allowing discovery and protecting parties and deponents from undue burdens. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1277–78 (7th Cir.1982).

■ Protective orders prohibiting depositions are rarely granted. *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979); *see also* 8 C. WRIGHT, A. MILLER, & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2037 (West 1994). A party seeking to quash a deposition in its entirety has a heavy burden of demonstrating good cause. *Frideres v. Schiltz,* 150 F.R.D. 153, 156 (S.D.Iowa 1993); *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C.1987). The standard in the Fifth Circuit is "extraordinary circumstances." *Salter,* 593 F.2d at 651. The movant must show a particular and compelling need for such an order. Conclusory assertions of injury are insufficient. *Medlin,* 113 F.R.D. at 653; *CBS, Inc. v.*

*Ahern,* 102 F.R.D. 820, 822 (S.D.N.Y.1984). This requirement "furthers the goal that courts only grant as narrow a protective order as is necessary under the facts." *Frideres,* 150 F.R.D. at 156, *citing Brittain v. Stroh Brewery Co.,* 136 F.R.D. 408, 412 (M.D.N.C.1991).

### 2. Deposition of J.B.

■ The defendants have an interest in conducting discovery and preparing this case for trial. These are important considerations and great care must be taken to avoid their unnecessary infringement. *See Farnsworth,* 758 F.2d at 1547. Plaintiff also has a significant interest in protecting her daughter from the psychological and emotional harm that may result from a deposition.[3] *See Medlin,* 113 F.R.D. at 653. However, the evidence presented by plaintiff does not rise to the level of "extraordinary circumstances" necessary to prohibit the defendants from conducting this discovery.

First, J.B. has demonstrated that she is capable of talking about the events surrounding her alleged sexual abuse. She has discussed this incident with therapists, police officers, the district attorney and her lawyers. Plaintiff has not shown that J.B.'s mental condition deteriorated or that she was emotionally traumatized as a result of these discussions.

Second, the objective medical evidence does not establish that J.B. will be irreparably harmed by the deposition process. Two psychologists testified at the hearing. Barbara Rila said that J.B. could not withstand the rigors of a deposition. Frank Trimboli testified that she could be deposed in this case. Significantly, neither witness has examined J.B. within the past ten months or reviewed her current medical records. Plaintiff did not introduce J.B.'s medical records into evidence or proffer testimony from

---

3. Plaintiff argues that this interest is founded on a right to bodily integrity that is protected by the substantive component of the due process clause. She relies on *Doe v. Taylor I.S.D.,* 15 F.3d 443 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994), in an attempt to establish a constitutional basis for her motion to quash. The issue in *Doe* was whether a civil rights claim against a public school district was

barred by qualified immunity. It was in that context that the Fifth Circuit recognized a child's right to bodily integrity and to be free from physical sexual abuse. *Doe,* 15 F.3d at 451–52. The opinion does not address or even mention the parameters of discovery in a sexual abuse case. Therefore, *Doe* provides little guidance in resolving this discovery dispute.

her treating therapist. The Court is unable to conclude that there are no conditions under which the deposition could safely proceed.

▮ Finally, plaintiff is not entitled to quash the deposition merely because J.B. may be incompetent to testify at trial. The right to depose a witness and the right to use that testimony in court are separate and distinct. *See United States v. International Business Machines Corp.*, 90 F.R.D. 377, 381 n. 7 (S.D.N.Y.1981), *citing* 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2007 (West 1970). The discovery rules expressly provide that the information sought need not be admissible at trial if it "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R.CIV.P. 26(b)(1). Dr. Rila testified that J.B. has a learning disability and long term memory problems. She said that this could make if difficult for J.B. to provide reliable information in response to questions. Dr. Rila also stated that J.B. recanted her accusations against Roy Reed George because of the fear and anxiety surrounding the first deposition scheduled in this case. Plaintiffs argue that the combination of these factors show that J.B. is not competent to discuss her abuse in a stressful situation. However, the defendants properly contend that J.B.'s memory problems and subsequent recantation are relevant to their defense. *See Miller v. Basbas,* 131 N.H. 332, 553 A.2d 299, 303 (1988) (child's inability to remember events surrounding alleged sexual abuse are relevant to defense).

Plaintiff relies on four cases to support her argument that J.B. should not be deposed. *Motsinger v. Flynt,* 119 F.R.D. 373 (M.D.N.C.1988); *Medlin,* 113 F.R.D. at 650; *In re McCorhill Publishing, Inc.,* 91 B.R. 223 (Bankr.S.D.N.Y.1988); *Frideres,* 150 F.R.D. at 153. All four cases can be distinguished on their facts. In *Motsinger* and *Medlin,* the trial court temporarily postponed the plaintiff's deposition. *Motsinger,* 119 F.R.D. at 378 (six week stay); *Medlin,* 113 F.R.D. at 653 (thirty day stay). Neither case involved a request to quash the deposition in its entirety. Significantly, the trial judge in *Medlin* refused to issue a longer stay based on

conclusory statements from a psychiatrist. The judge noted that "plaintiff has met her initial burden to receive a brief stay but more is required should she want a substantial or permanent stay of her deposition." *Medlin,* 113 F.R.D. at 653.

In *McCorhill Publishing,* the uncontroverted medical evidence justified a protective order prohibiting the deposition of an 80 year old witness. A doctor testified that the witness could not process facts because of dementia and may not withstand the agitation caused by the deposition process. The court observed that "the debtor cross-examined [the doctor] and could have also introduced contradictory evidence, if any. There was no evidence to rebut [the doctor's] unequivocal testimony that an oral deposition of [the witness] ... could have deleterious consequences to his health and that he was physically incapable of furnishing any information." *McCorhill Publishing,* 91 B.R. at 225. In the instant case, the evidence regarding J.B.'s ability to give a deposition was hotly contested. Two psychologists offered different opinions about the potential dangers associated with this proceeding. The record in this case is much less compelling than that presented in *Medlin.*

Finally, the *Frideres* case did not involve the deposition of a party. Rather, the plaintiff sought to depose her sister in order to corroborate allegations of sexual abuse against their parents. The sister moved to quash the deposition because of a life-threatening medical condition that is aggravated by stress. The trial court postponed the deposition pending further information about her condition. Specifically, the trial court wanted to know "whether a deposition without the parties present would substantially reduce or eliminate the health risks considered by the doctors." *Frideres,* 150 F.R.D. at 158. In this case, the evidence shows that certain procedural safeguards could be implemented to minimize the risk of harm during a deposition.

The Court concludes that the defendants' right to depose J.B. outweighs the plaintiff's concern that her daughter will be further harmed by the process. However, some limitations and procedural safeguards are neces-

sary to minimize the risk of psychological or emotional harm.

### 3. *Procedural Safeguards*

■ The parties have agreed on certain safeguards should this deposition proceed. Specifically, they agree that: (1) the deposition should be conducted at the New Life Children's Treatment Center in early January 1995; (2) J.B.'s mother and therapist may attend the deposition; (3) Roy Reed George should be excluded from the deposition site; and (4) the proceeding may be videotaped. Plaintiff argues that additional restrictions are necessary in order to minimize the risk of harm to her daughter. She requests that Barbara Rila be appointed to serve as a neutral third-party "interpreter" for the deposition. Dr. Rila would review a list of questions submitted by the defendants and ask them in an unobtrusive and non-confrontational manner. The defendants could listen to J.B.'s response over an audio speaker. Plaintiff argues that this procedure has been endorsed by the State Bar of Texas Committee on Child Abuse and Neglect.[4]

Predictably, the defendants vigorously object to these additional restrictions. They argue that it impermissibly and unnecessarily infringes on their right to personally examine a named party and one of the most important witnesses in this case. The defendants assert that the filtration of questions through an interpreter will contaminate the information they need in order to prepare their defense.

As a general rule, the defendants should be allowed to ask their own deposition questions. It is improper for an intermediary to interpret questions and help the witness formulate answers. *See Hall v. Clifton Precision,* 150 F.R.D. 525, 528 (E.D.Pa.1993). This important right should only be restricted in exceptional cases for good cause shown. Plaintiff has failed to establish that a third-party interpreter is required in this case. J.B. is now 15 years old. She has discussed

this incident without the aid of an interpreter in the past. Her situation is demonstrably different than those cases involving younger children who are often unable to articulate or communicate the events surrounding their abuse claims. In addition, Dr. Rila is hardly a neutral third-party. She describes herself as an "advocate" for J.B. and, as such, is presumptively disqualified from asking questions on behalf of the defendants.

Courts have long recognized the need to protect the physical and psychological well-being of child abuse victims in judicial proceedings. A variety of measures have been suggested to ameliorate the harsh atmosphere of a typical courtroom setting. *See Maryland v. Craig,* 497 U.S. 836, 843, 110 S.Ct. 3157, 3162, 111 L.Ed.2d 666 (1990) (child testified over one-way closed circuit television outside the presence of the parties); *United States v. Carrier,* 9 F.3d 867, 869 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1571, 128 L.Ed.2d 215 (1993) (child testified over two-way closed circuit television in the presence of the attorneys); *United States v. Garcia,* 7 F.3d 885, 887 (9th Cir.1993) (child testified over two-way closed circuit television outside the presence of the defendant); *Thomas v. Gunter,* 962 F.2d 1477, 1480 (10th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 447, 126 L.Ed.2d 380 (1993) (child videotaped at treatment center in the presence of her therapist and an investigator selected by the defendant); *Spigarolo v. Meachum,* 934 F.2d 19, 21 (2d Cir.1991) (child videotaped in the presence of the attorneys and judge); *Arcaris v. Superior Court,* 160 Ariz. 533, 774 P.2d 837, 839 (App.1989) (mother allowed to be present during child's deposition); *Otteson v. District Court,* 443 N.W.2d 726, 727 (Iowa 1989) (defendant separated from child by one-way mirror). These cases strike an appropriate balance between the need to provide a supportive environment for the child witness and the defendant's right to a fair trial. The Court finds that similar restrictions in this case will

---

4. The State Bar of Texas, in cooperation with the Texas Legal Resource Center for Child Abuse and Neglect, has published a manual for attorneys who handle child abuse cases. State Bar of Texas, Manual for Attorneys in Child Abuse and Neglect Cases (2d Ed.1994). This publication was developed primarily for use in cases involving the termination of parental rights. However, the recommendations pertaining to the deposition of child abuse victims are equally applicable in civil litigation matters.

minimize the emotional harm incident to a deposition while allowing the defendants to conduct their own discovery.

### ORDERS

Plaintiff's motion to quash and motion for reconsideration are granted in part and denied in part. The Court finds that the defendants should be allowed to depose J.B. However, the following protective orders are necessary to minimize the risk of emotional and psychological harm to the witness:

1. The deposition of J.B. shall be conducted at the New Life Children's Treatment Center in Canyon Lake, Texas on January 4, 1995, unless otherwise agreed by the parties.

2. The following persons may be present in the same room as the witness during the deposition: (a) Linda Bucher; (b) counsel for the plaintiff; and (c) Barbara Rila, or another therapist selected by J.B.

3. Counsel for the defendants shall question the witness from another room located at the treatment facility. The questions and answers shall be transmitted over a closed circuit television. One camera shall be focused on J.B. Another camera shall be focused on the attorney asking questions. The defendants and their attorneys shall not be allowed physical access to J.B. at any time during this deposition.

4. The subject matter of this deposition shall be limited to exploring those facts directly related to liability and damages. Counsel shall refrain from tactics calculated to confuse, annoy, harass, or imply doubt regarding the veracity of the witness.

5. The deposition will be limited to two hours of direct examination to be divided between counsel for Defendant RMC and Defendant George. This does not include any time consumed by objections, attorney dialogue, breaks or other interruptions. Counsel for plaintiff may cross-examine the witness for a time period not to exceed thirty minutes. Defendants may then conduct re-direct examination for a time period not exceed the length of cross-examination.

6. The technical costs associated with this deposition shall be divided equally between plaintiff and the defendants.

7. A violation of this order may result in the imposition of sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure.

SO ORDERED.