UNITED STATES of America,

v.

**Renato P. MARIANI, Michael L. Serafini, Leo R. Del Serra, Alan W. Stephens, Robert Giglio, and Frank Serafini, Defendants.**

No. 3:CR–97–0225.

United States District Court,
M.D. Pennsylvania.

April 1, 1998.

James Gibbons, Scranton, PA, for Louis Serafini.

Bruce Brandler, Harrisburg, PA, for U.S. Gov't.

## MEMORANDUM

VANASKIE, District Judge.

### I. BACKGROUND

On October 7, 1997, a federal grand jury in this District returned a 140–count indictment against six defendants, Renato P. Mariani, Michael L. Serafini, Leo R. Del Serra, Alan W. Stephens, Robert Giglio, and Frank Serafini. The first 134 counts essentially concern alleged illegal campaign contributions under the Federal Election Campaign Act, 2 U.S.C. §§ 431, et seq. Counts 135 through 138 concern obstruction of justice charges leveled against defendants Michael L. Serafini and Leo R. Del Serra. Count 139 charges defendant Robert Giglio with having presented perjured testimony to the grand jury. This is the only count in which Giglio is named as a defendant. Count 140 levels the same charge against defendant Frank Serafini, who is a Pennsylvania State Representative, having been elected to represent the 114th Legislative District in Pennsylvania. Defendant Frank Serafini is named as a defendant in the indictment only in Count 140.

On December 1, 1997, the government filed a motion under Federal Rule of Criminal Procedure 15 for an order authorizing the taking of the deposition of Louis Serafini for later use at trial. (Dkt. Entry 67.) Louis Serafini is the 83 year-old father of defendant Frank Serafini and the grandfather of defendant Michael Serafini. Because of Louis Serafini's age and health condition, the government sought to preserve his testimony through a pre-trial deposition. On January 14, 1998, this Court issued a Memorandum and Order granting the government's request to take Louis Serafini's deposition. (Dkt. Entry 131.)

On January 26, 1998, Louis Serafini filed a motion for a protective order, alleging that he was too ill to be required to give a deposition. (Dkt. Entry 137.) The government opposed this motion for a protective order. The government was provided with the medical records of Louis Serafini and was also permitted to have its own doctors examine Louis Serafini. On March 27, 1998, an evidentiary hearing was held in which expert medical testimony was received concerning Louis Serafini's current medical health. Because Louis Serafini has demonstrated that any pre-trial deposition could potentially result in a worsening of his condition and/or his death, Louis Serafini's motion for a protective order will be granted.

### II. DISCUSSION

It is rare for a court to issue a protective order that prohibits a deposition. See Frideres v. Schlitz, 150 F.R.D. 153, 156 (S.D.Iowa 1993); In re McCorhill Publ'g Inc., 91 B.R. 223, 225 (Bankr.S.D.N.Y.1988). A party seeking to obtain a protective order to avoid the taking of a deposition bears a heavy burden. See McCorhill, 91 B.R. at 225 ("A prohibition against the taking of oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order."); see also Salter v. Upjohn Co., 593

F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition and absent extraordinary circumstances, such an order would likely be in error."); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."). This is especially true in a criminal case.[1] Nonetheless, if there is compelling evidence that a deposition will constitute a substantial threat to a witness' life, then it is appropriate to grant a protective order. *McCorhill*, 91 B.R. at 225 ("Manifestly, if an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order."). In this case, Louis Serafini contends that as a result of his weakened physical condition, a deposition would threaten his life.[2]

At the evidentiary hearing, it was established that Louis Serafini, age 83, has seen his health deteriorate rapidly since the Summer of 1997. In the Fall of 1997, he suffered several myocardial infarctions. On October 14, 1997, just one week after the indictment of his son and grandson, Louis Serafini suffered a cardiovascular accident, resulting in his hospitalization until October 19, 1997. He subsequently underwent a cardiac catheterization at the Hershey Medical Center, which confirmed severe and inoperable atherosclerotic coronary artery disease and cardiomyopathy with a significantly decreased cardiac output. His ejection fraction, a measure of the heart's pumping efficiency, is significantly below normal.[3] He is in congestive heart failure, and consequently takes a significant amount of medication each day. Louis Serafini was again hospitalized from November 18, 1997 through December 1, 1997, with a diagnosis of bilateral pneumonia, acute renal failure, and exacerbation of his cardiac disease. In February of 1998, Louis Serafini was hospitalized again for exacerbation of his heart condition. As a result of his worsening condition, Louis Serafini has been confined to his home, where he receives daily medical care.[4]

Two physicians testified and the deposition testimony of a third physician was admitted into evidence at the evidentiary hearing. It is undisputed that Louis Serafini is suffering from severe coronary artery disease. One artery is completely occluded, while two others are 80% to 90% blocked. He experiences angina attacks on a daily basis and frequently is short of breath. He is also exhibiting cardiac cachexia, resulting in substantial weight loss. His heart's pumping function is substantially impaired. The government's cardiologist, Steven Meister, M.D., testified that Louis Serafini is a "fragile old man" and a "very sick man." Furthermore, Louis Serafini's expert, Mark Kozak, M.D., testified that Louis Serafini is "dangling by a thread" and that he is "stable perched on a precipice." All of the physicians agreed that Louis Serafini was not a candidate for surgery and that his condition was terminal.

---

1. Rule 15 of the Federal Rules of Criminal Procedure does not contain any explicit provision pertaining to protective orders. Subpart (d) does specify that "a deposition shall be taken and filed in the manner provided in civil actions...." The parties have relied upon cases in the civil context where protective orders were sought based upon a witness' poor health. In the absence of precedent under Rule 15, use of civil case precedents seems appropriate, at least for establishing the analytical framework. Because of the importance of the testimony of Louis Serafini, it seems also appropriate to set the bar for a protective order a little higher than in the civil context.

2. Ironically, the government sought a pre-trial deposition under Federal Rule of Criminal Procedure 15 for the very same reason, *i.e.*, Louis Serafini's poor health. The government now contends, however, that although there is a danger that Louis Serafini will not be living by the date of trial, he will *likely* survive a deposition in which the government seeks to use his testimony to incriminate the defendants, including his son and grandson.

3. There was some dispute as to whether Louis Serafini's ejection fraction was 15% to 20% or 34%. Regardless of which ejection fraction is more accurate, Louis Serafini's ejection fraction is substantially below the ejection fraction of a healthy heart (50% to 75%).

4. A letter from Louis Serafini's counsel received shortly after the evidentiary hearing represented that on the day after the evidentiary hearing, Louis Serafini was hospitalized after he fell in his home and fractured a rib. Apparently, this fall was caused by an exacerbation of his heart condition.

Although the physicians could not predict how long Louis Serafini had to live, they appeared to agree that he would not survive for any substantial amount of time.

Because of this condition, Louis Serafini's attending physician, Dr. John Diakiw, testified that the stress of a deposition could trigger an irreversible cataclysmic reaction that would cost Louis Serafini his life. In opposition to this testimony, the government presented the testimony of a distinguished cardiologist, Steven Meister, M.D. Dr. Meister acknowledged that there was a chance that the stress from a deposition might trigger a cardiac arrest, but reasoned that such a result was unlikely, less than a one percent chance. In this regard, Dr. Meister testified that stressful events can promote the onset of a heart attack, *but* that the stressful event is not the cause of the heart attack. Such an individual was likely to have the heart attack within a short period of time in any event, and the stressful event may simply have accelerated the actual date of the occurrence.[5]

Although the government may feel that there is very little risk to Louis Serafini in taking his deposition, I cannot agree that the risk which exists should be taken. The government went to great lengths to emphasize the restrictions and safeguards that could be utilized to insure Louis Serafini's experience was as stress-free as possible. The government has also suggested that the questioning could be crafted in a manner to limit the stress to Louis Serafini.[6] But these restrictions and safeguards only serve to illustrate Louis Serafini's precarious condition. Moreover, the use of such safeguards could potentially hinder the defendants' right to cross-examination under the Sixth Amendment. Rule 15(d) of the Federal Rules of Criminal Procedure provides that "the scope and manner of examination and cross examination shall be such as would be allowed in the trial itself." Vigorous cross-examination would essentially be precluded by the government's suggested restrictions, or would put the defendants and their attorneys on the horns of a dilemma. Zealous cross-examination could endanger the witness, but may be essential to the defense. And even Dr. Meister agrees that the deposition should be ended if Louis Serafini suffers symptoms such as angina or shortness of breath, symptoms he now experiences daily. In short, the government's proposed "safeguards" appear unworkable.

■ As one district court noted:

This court is not prepared to assume the responsibility of subjecting Mr. Kraus to a life-threatening deposition simply on the statement of McCorhill's attorney that he has no intention of pressuring Mr. Kraus with questions if it appears that Mr. Kraus is incapable of furnishing any information. In the event that Mr. Kraus suffers a heart attack or other life threatening seizure as a result of an oral deposition, no amount of subsequent apologies or state-

**5.** In this regard, Dr. Meister testified that one study considered the number of heart attacks after a major earthquake in Los Angeles. In this study, it was determined that there was a significant increase in the number of heart attacks in Los Angeles during the time frame of the earthquake, but the incidence of heart attacks decreased in the weeks subsequent to the earthquake. Dr. Meister noted that this study demonstrates that some people were on the verge of having heart attacks and the stressful event simply induced the inevitable. Dr. Meister then used this result to reason that Louis Serafini will eventually die from his heart condition. If he succumbs to his heart condition at the deposition, the result will not be caused by the deposition, but by his pre-existing heart condition. This analysis provides little comfort for a decision to allow Louis Serafini to be exposed to what undoubtedly would be a stressful proceeding. Life is too precious to take a risk of accelerating even by a few days what may have been inevitable. In this regard, Dr. Meister did not seriously dispute the testimony of Dr. Diakiw that a myocardial infarction would be irreversible.

**6.** Although the government contends that the subject matter of the proposed deposition will not be stressful for Louis Serafini because he has already testified before the grand jury concerning this matter, the record demonstrates that Louis Serafini's health began to deteriorate rapidly within one week of the indictment of his son and his grandson. In this regard, it is apparent that the government seeks Louis Serafini's testimony as evidence against either Louis Serafini's son and/or his grandson. Therefore, it cannot be reasonably maintained that Louis Serafini will not suffer additional stress from the knowledge that his testimony may be used against either his son or his grandson.

ments of sorrow will compensate for the known risk, especially since the only medical testimony reflects the fact that Mr. Kraus' life will be placed in jeopardy by exposing this infirm and senile 80 year old man to a pre-trial deposition.... At this point in Mr. Kraus' life, the issue for the court is not his competency to testify, but his ability to survive an oral deposition.

*McCorhill,* 91 B.R. at 225. Likewise in this case, the medical testimony establishes that Louis Serafini is terminally ill with severe coronary artery disease and congestive heart failure. Because of his age and the damage to his heart, his condition is terminal. I am not willing to risk the potential acceleration of Louis Serafini's death by requiring him to submit to a deposition in which the government attempts to use him to obtain information to prosecute his son and/or his grandson. Although protective orders are rarely granted to prohibit depositions, I find that Louis Serafini has met the heavy burden of showing a substantial threat to his life, sufficient to warrant entry of a protective order. Therefore, Louis Serafini's motion for a protective order will be granted.

## III. CONCLUSION

It is undisputed that Louis Serafini suffers from a severe coronary artery disease and congestive heart failure that threatens his life on a daily basis. Louis Serafini is critically ill with an inoperable coronary condition that could result in his death at any moment. Although the government contends that there is a very small risk that Louis Serafini will suffer a heart attack as a result of the stress associated with a deposition, I am not willing to take such a chance. Therefore, Louis Serafini's motion for a protective order will be granted.