# In re **TUTU WATER WELLS CONTAMINATION CERCLA LITIGATION**

Civ. No. 1989/107-STT

District Court of the Virgin Islands

Div. of St. Croix

June 16, 1999

DOUGLAS L. CAPDEVILLE, KEEL M. DAMSGAARD, THOMAS MCKAY, III, *for Defendant(s)*

RESNICK, Jeffrey L., *Judge*

## OPINION ON MOTION FOR A
## PROTECTIVE ORDER BY ANDREAS GAL

This matter came for consideration before the undersigned Magistrate Judge on the motion of third-party defendants, Andreas Gal ("Gal") and Paul Lazare ("Lazare") for permission to file physicians' affidavits under seal and for a protective order pursu-

ant to Fed. R. Civ. P. 26(c) quashing notices to take further deposition of Gal and Lazare.[1] [2]

Esso Virgin Islands, Inc. and Esso Standard Oil Co. of Puerto Rico filed a response in opposition to the motion. Gal and Lazare filed a reply memorandum in further support of their position. A conference call was held with District Judge Brotman and all interested parties on March 31, 1999 and a transcript of such conference was provided to the Court.[3]

## I. BACKGROUND

This environmental action was commenced in July of 1989, but no claims were asserted against Gal and Lazare until the middle of 1992. At that time, various common law claims were instituted against Gal and Lazare by various parties including Esso Standard Oil, S.A., LTD, Esso Virgin Islands, Inc., Esso Standard Oil Company (Puerto Rico) Texaco, Inc., Texaco Caribbean, Inc., Four Winds Plaza Partnership, and Harthman. Concurrently, the same parties asserted claims against Gal and Lazare under the Comprehensive Environmental Response, Compensation and Liabilities Act ("CERCLA"), 42 U.S.C. § 9605.

Soon after these claims were asserted, Lazare was deposed on November 12, 1992. *See* Deposition of Lazare on November 12, 1992. Next, Gal and Lazare were deposed as part of the discovery process on December 10, 1992 and December 11, 1992 respectively. *See* Deposition of Gal at December 10, 1992 and Deposition of Lazare on December 11, 1992. Further depositions were taken of Gal on October 11, 1993 and October 12, 1993. *See* Deposition of Gal on October 11, 1993 and Lazare on October 12, 1993. On October 4, 1994, Lazare was redeposed pursuant to Order of this Court. Collectively, Gal and Lazare have given over 1100 pages of deposition testimony.

---

[1] This motion was brought in August of 1998. Since that time, Paul Lazare has died, and as a result, this motion is rendered moot as it pertains to him.

[2] Originally, this motion requested that all medical affidavits be filed under seal. On September 8, 1998, the parties entered into a stipulation, pursuant to which all physicians' affidavits were to be filed under seal. *See Stipulation of September 8, 1998.* Accordingly, the Court need not address this issue.

[3] By Notice to all counsel dated June 3, 1999, District Judge Brotman requested that this motion be ruled upon by the undersigned Magistrate Judge.

On June 22, 1998, deposition notices to take *de bene esse* deposition of Gal and Lazare were served by the law offices of Douglas L. Capdeville, local counsel herein for Esso Standard Oil S.A. LTD., Esso Virgin Islands, Inc., Esso Standard Oil Co. (Puerto Rico). (collectively "Esso defendants"). This notice was joined by Texaco Inc. and Texaco Caribbean Inc. (collectively "Texaco defendants") as well as L'Henri, Inc. Cyril V. Francois Associates, Evan Francois Sr., Gloria F. McGowan, Linda F. Sheviski, The Victor H. Francois Trust, Evan A. Francois Jr., Therese S. DuBois, Carol M. Sheviski, the G.A.F. Trust, The L. Mercedes Sheviski Trust, and The Carol Sheviski Trust (collectively "L'Henri").

As a result of this notice, numerous physicians' affidavits have been filed under seal with the Court, respecting the health status of Gal and Lazare. Lazare died on January 21, 1999.

Gal brought this motion to seek to quash the notice of deposition.

## II. DISCUSSION

Gal argues that his deposition should not be taken for two reasons: First, because of his age and state of health, a deposition could be life threatening; Second, counsel has previously deposed him at various times and cannot now demonstrate good cause as to why further deposition should be permitted.

Fed. R. Civ. P. 26 provides for protective orders against notices of deposition:

> (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . . including one or more of the following:
>
> (1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

. . . .

Fed.R.Civ.P. 26(c).

Fed. R. Civ. P. 30 provides, in relevant part, for the request of deposition testimony:

Rule 30. Depositions Upon Oral Examination
(a) When Depositions May be Taken; When Leave Required
(2) A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . .
(B) the person to be examined already has been deposed in the case. . .

Fed. R. Civ. P. 30(a)(2)(B).

Fed. R. Civ. P. 26(b) provides, in relevant part:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(2) . . . . The frequency or extent or use of the discovery methods otherwise permitted under these rules and by the local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . . (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden . . . of the proposed discovery outweighs its likely benefit, taking into account the needs of the case . . . the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26.

In this case, the situation exists where Gal had been previously deposed. Therefore, the Esso Defendants, the Texaco Defendants, and the other Third-Party Defendants must, pursuant to Fed. R. Civ. P. 30, seek leave of the Court in order to redepose Gal.

357

However, Gal must, for purposes of this motion, show good cause as to why a protective order would be necessary. In order to achieve a just outcome, the Court must balance Gal's reasoning for a protective order against the need for further deposition.[4]

## 1. Gal's State of Health

■ It is rare for a court to issue a protective order that completely precludes a deposition. *See Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D.Iowa 1993). Gal bears a heavy burden of demonstrating good cause for such an order. *See In re McCorhill Publ'g Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988). If there is compelling evidence that a deposition will be a substantial threat to the deponee's life, a Court may in its discretion appropriately grant a protective order. *Walsh v. Pullman Co.*, 10 F.R.D. 77 (S.D.N.Y. 1948). The court in *McCorhill*, in deciding to preclude the deposition of an 80 year-old man, stated that "in the event that Mr. Kraus suffers a heart attack . . . as a result of an oral deposition, no amount of subsequent apologies or statements of sorrow will compensate for the known risk." *McCorhill*, 91 B.R. at 225.

Another consideration may be whether or not there exist competing opinions as to the witnesses' ability to withstand a deposition. In *Bucher v. Richardson Hospital Authority*, 160 F.R.D. 88, 92-93, the court distinguished the facts of *McCorhill*, where no uncontroverted medical evidence regarding the witness' health existed, from the facts in *Bucher*, where the status of the witness' ability to testify was hotly contested. After weighing the evidence, the *Bucher* court decided not to quash the deposition. In contrast, the court in *United States v. Mariani*, 178 F.R.D. 447 (M.D.Pa. 1998), held that a protective order prohibiting deposition was warranted where the witness was an 83-year-old man suffering from severe coronary artery disease and congestive heart failure. *See Mariani*, 178 F.R.D. at 451.

Another possible consideration is the Court's ability to make the deposition as comfortable as possible for the witness without

---

[4] The Esso Defendants, the Texaco Defendants, and L'Henri have not sought leave of the Court to redepose Gal, but have served Gal with a notice of deposition. For purposes of judicial economy, this Court will treat such notice as though leave by the Court was sought.

jeopardizing his life. For example, in *Haviland & Co. v. Montgomery Ward & Co.*, 31 F.R.D. 578 (S.D.N.Y. 1962), the court allowed the witness the option of having his deposition taken at his residence, given that the witness was 80 years of age and claimed various maladies. *Haivland*, 31 F.R.D. at 580.

Dr. Richard Bader, the personal physician of Andreas Gal, advises that Gal is an 81-year-old man who is suffering from coronary artery disease, angina pectoris, and a history of paroxysmal atrial fibrillation. *See* Affidavit of Dr. Richard A. Bader ("Bader Affidavit"). In addition, Bader states that Gal has a high-grade stenosis in the right proximal internal cartoid artery extending over two centimeters to the bifurcation. *See id.* Furthermore, an MRI of Gal's head and neck demonstrated an eccentric plaque involving the right carotid artery, cortical atrophy, ischemic disease, and poor arborization of the right middle cerebral artery branch. Gal is being treated with a variety of medications. *See id.* Bader believes that a deposition would bring a distinct threat of stroke or heart attack. *See id.*

In contrast, Dr. Bruce Charash ("Charash"), predicating his opinion on Gal's medical history from 1980 to 1997, contests Bader's conclusion regarding the deposition. *See* Affidavit of Bruce David Charash, M.D. concerning Gal ("Charash Affidavit re: Gal"). Specifically, Charash disputes the severity of Gal's condition and concludes that Gal would not be at an increased risk for stroke, heart attack, or death by rendering deposition testimony. *See id.*

Despite the conflicting testimony from the doctors, it appears that Gal's health is in an extremely fragile state. It is important to note that on October 29, 1998 Charash signed an affidavit testifying that Lazare was not on "maximum therapy for his various medication conditions" and that none of his conditions were dire, *see* Affidavit of Bruce David Charash, M.D. concerning Lazare ("Charash Affidavit re: Lazare"), yet Lazare died less than three months after this affidavit.

In the instant case, Charash testifies to Gal's ability to withstand a deposition. However, by way of comparison, Bader's affidavit is stronger in its recommendation than Charash's. For example, Bader states that Gal suffers from "coronary artery disease, angina pectoris, and a history of paroxysmal atrial fibrillation." Charash

Affidavit re: Gal. In addition, Bader states that another major risk factor is Gal's "high grade stenosis in the right proximal internal cartoid artery extending over two centimeters to the bifurcation." *Id.* Following a continued laundry list of Gal's maladies, Bader advises "that it would be extremely threatening to his health and life if he were to appear for such testimony." *Id.* In contrast, Charash's affidavit only attempts to dilute the extremity of Gal's health status. For example, he states that "[t]he carotid disease suffered by Mr. Gal has not changed clinically based on carotid ultrasound examinations performed in 1994 through November 18, 1997." Charash Affidavit re: Gal at ¶4(a). Charash's conclusion is also predicated on the fact that Gal "suffers from chronic medical conditions which appear to be well-treated and he is not on maximum therapy for those conditions." *Id.* at ¶4(e). Such conservative statements do not negate Bader's strong recommendation to preclude any testimony. Given the urgency of Bader's testimony, especially when compared to Charash's more diluted statements, this Court must consider Gal's health to be in great distress.

In addition, Gal also argues that he and Lazare have already been subject to extensive deposition testimony regarding his connection with the creation of Laga Industries, Inc., the purchase of the property, the construction of a manufacturing plant thereon, and its operation. Both he and Lazare also gave substantial testimony regarding Panex Co.'s purchase of the property and subsequent sale thereof to the Government of the Virgin Islands. In opposition, the Esso Defendants argue that a re-deposition is necessary given: (1) the likelihood that Gal will not be alive for trial; and (2) the distinction between the purposes of the past discovery depositions and the current request for a *de bene esse* *deposition.*

Esso argues that District Judge Brotman had stated, in *In re: Tutu Wells Contamination Litigation,* 38 V.I. 275, 994 F. Supp. 638, 672 (D.V.I. 1998), that the deposition testimony was insufficient to resolve disputed facts on the liability issues there involved. Judge Brotman stated, in discussing depositions of Gal and Lazare, that, "this Court has not had the benefit of judging the credibility or hearing expert testimony regarding alleged contamination. Nor has the discovery process been fully allowed to run its course." *Id.*

This statement, however, does not imply that more deposition testimony of Gal and Lazare was essential to the case. Instead, Judge Brotman was merely stating his reasons for denying Esso's motion for summary judgment where an issue of fact still remained.

Next, the Esso Defendants cite to *Deines v. Vermeer Mfg. Co.*, 133 F.R.D. 46 (D.Kan. 1990) for the proposition that the unlikelihood of a witness being able to testify at trial makes it more important that a redeposition take place. However, *Deines* is distinguished in that the court found Vermeer failed to provide specific factual showing of medical reasons explaining why Vermeer could not be subjected to deposition. *See id.* at 49. In the instant action, Bader provides Gal's specific medical conditions, which include coronary disease, angina pectoris, and paroxysmal atrial fibrillation.

█ Esso Defendants also cite to Polozie v. United States, 835 F. Supp. 68 (D.Conn. 1993) to support the argument that discovery depositions are distinct from *de bene esse* depositions, so that the latter is necessary even if the former has taken place. The *Polozie* court did distinguish de bene esse depositions from discovery depositions. However, the court in *Polozie* specifically emphasized that the case involved an expert witness, whom the attorneys fully expected to be present at trial. In addition, the fourth circuit has noted that the "Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*)." *Tatman v. Collins*, 938 F.2d 509, 510 (4th Cir. 1991) (citations omitted). Furthermore, the court stated that it was "unaware of any authority which makes that distinction." *Id.* In *United States v. IBM Corp.*, 90 F.R.D. 377 (S.D.N.Y. 1981), the court provided an explanation as to how any potential distinction between "discovery" and "*de bene esse*" depositions were deliberately eliminated from the Federal Rules:

> Prior to the revision of the Federal Rules of Civil Procedure in 1970, Rule 26(a) provided that depositions could be taken "for the purpose of discovery or for use as evidence in the action or for both purposes." Rule 26(d), the predecessor of Rule 32(a), which governed the use of

depositions at trial, did not, however, state any distinction between discovery and evidentiary depositions. Recognizing a possible ambiguity in the rule, courts nevertheless refused to recognize a distinction between "Discovery" and "evidentiary" depositions with regard to admissibility at trial. When the subject matter of Rule 26(a) was transferred to Rule 30(a) in the 1970 revision of the rules, the language authorizing Depositions "for the purpose of discovery or for use as evidence in the action or for both purposes" was omitted.

*IBM*, 90 F.R.D. at 381 n. 7 (citations omitted). Thus, this Court is unable to recognize a distinction between a *de bene esse* deposition and one used for discovery.

█ In the instant action, the Esso Defendants knew, at the time of deposition, that Gal, a man with health problems in his 70's, was not getting any younger or healthier. Even more important, however, is that previous depositions have been taken on numerous occasions of both Gal and Lazare. In balancing the Esso Defendants' alleged need for redeposition against the existence of depositions previously taken of Gal and the state of Gal's health, this Court will not order a further deposition of Gal. No deposition under these circumstances is worth risking a man's life, and in this case, where depositions have already occurred, this Court could not in good conscience subject Gal to a very real risk of danger.

## III. CONCLUSION

For the reasons discussed above, Gal's Motion for a Protective Order is granted, and the Esso Defendant's the Texaco's Defendant's and L'Henri's notice to take further depositions of Gal is QUASHED.