Linda FRIDERES; Dean Frideres; Mollie Baas, by her next friend, Linda Frideres; and Danielle Frideres, by her next friend, Linda Frideres, Plaintiffs,

v.

Marlin SCHILTZ; Kathryn Schiltz; Kenneth Schiltz; and Richard Schiltz, Defendants.

No. 4–93–MC–23–4.

United States District Court, S.D. Iowa, C.D.

June 30, 1993.

John D. Hudson of Carney, Hudson, Williams, Blackburn, Grask & Appleby, Des Moines, IA, for non-party movant Ruth VanderLinden.

Roxanne Barton Conlin of Roxanne Barton Conlin Law Firm, Des Moines, IA, for plaintiffs.

Iris Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, IA, for defendants.

## ORDER GRANTING MOVANT'S MOTION FOR PROTECTIVE ORDER

BENNETT, United States Magistrate Judge.

### I. INTRODUCTION AND BACKGROUND

This expedited matter is before the court pursuant to a Motion to Quash Subpoena and Request for Protective Order and Memorandum in Support of Motion to Quash and/or for Protective Order filed by non-party movant, Ruth VanderLinden, on June 30, 1993 at 10:50 a.m. At the request of Ruth Vander-Linden's counsel, this matter was set for an expedited telephonic hearing on June 30, 1993 at 2:00 p.m. Ruth VanderLinden is represented by Des Moines attorney, John D. Hudson of Carney, Hudson, Williams, Blackburn, Grask & Appleby. Plaintiffs are represented by Des Moines attorney Roxanne Barton Conlin of Roxanne Barton Conlin Law Firm, P.C. Defendants are represented by Iris Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa. Mr. Hudson, Ms. Conlin and Ms. Muchmore participated in the June 30th telephonic conference.

This is a case that has been filed in the United States District Court for the Northern District of Iowa[1] by Plaintiff Linda Frideres, and members of her family against her parents and two brothers for sexual abuse that allegedly occurred to Linda when she was a child. Ruth VanderLinden is her sister and Plaintiffs claim an essential witness. Ruth VanderLinden seeks to quash a deposition subpoena for her deposition on July 1, 1993 at 9:00 a.m. sought by the Plaintiffs as well as a protective order to prevent her deposition due to her alleged medical condition.

### II. FACTUAL FINDINGS (FOR PURPOSES OF THIS HEARING ONLY)

Ruth VanderLinden suffers from granulomatous enterocolitis.[2] One of Ruth Vander-Linden's treating physicians is Dr. Jon D. Gibson, a gastroenterologist. On June 29, 1993 Dr. Gibson wrote the following correspondence to Plaintiffs' counsel:

Dear Ms. Conlin:

Your subpoena for deposition of Ruth VanderLinden for U.S. District Court Case # C913074 on 7/1/93 is expected to be very stressful to Ms. VanderLinden. As you are aware, she has granulomatous enterocolitis previously complicated by life-threatening hemorrhage and with documented history of exacerbation due to stress. From a medical view point your action to subpoena Ms. VanderLinden as a witness recklessly and negligently places Ms. VanderLinden's life in danger. I urge you to reconsider the subpoena.

Please respond by noon tomorrow, 6/30/93. I will be out of town; you may speak with Dr. Piros at 241-5951.

Sincerely,

Jon D. Gibson, M.D.

Gastroenterology

---

1. This court has jurisdiction over this discovery dispute pursuant to Federal Rule of Civil Procedure 26(c) which states in relevant part:

   Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, *the court in the district where the deposition is to be taken* may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... Fed.R.Civ.P. 26(c) (emphasis supplied).

2. Granulomatous enterocolitis is an inflammation of the small intestine and the colon having nodular lesions. *See* Stedman's Medical Dictionary 517 and 668 (25th ed. 1982); Dorland's Illustrated Medical Dictionary 494 (24th ed. 1965).

In a prior letter dated April 19, 1993, also addressed to Plaintiffs' counsel, Dr. Gibson stated:

Dear Ms. Conlin:

Dr. Piros directed your letter of April 12, 1993 to me for reply. I am enclosing herein a copy of my letter to you of March 8, 1993, and I apologize if you did not receive this earlier.

It remains my opinion that a risk of serious complications of her Crohn's disease, including recurrent life-threatening hemorrhage, attaches to the stress related to this legal matter. Specific stressful influences include telephone calls, subpoena, requests for deposition and testimony.

I do not think you can get Ruth's testimony without seriously endangering her health.

Sincerely,

Jon D. Gibson, M.D.

Gastroenterology

Dr. James G. Piros is a physician who is board certified in gastroenterology and who practices with Dr. Gibson in a medical group styled Internal Medicine Faculty & Clinics of Des Moines. He, too, is familiar with Ruth VanderLinden's medical condition. Dr. Piros indicated in an affidavit filed June 30, 1993 that Ruth VanderLinden's "condition is fragile and in the past 12 months she has had several bleeding episodes, including a life-threatening hemorrhage." (Affidavit of James G. Piros, ¶ 2). Dr. Piros diagnoses Ruth VanderLinden with inflammatory bowel disease (Crohn's Disease), which is aggravated by emotional distress. (Affidavit of James G. Piros, ¶ 3). Dr. Piros offers the following medical opinion:

4. I am generally familiary [sic] with the pending lawsuit relating to Mrs. Vander-Linden's sister and other family members, and it is my medical opinion that involving Ruth M. VanderLinden in said proceedings as a witness, deponent, or in any other manner would be medically life threatening due to the stress involved in such proceedings.

5. It would be my strong medical recommendation that Ruth E. VanderLinden not participate in any depositions, testimony, trials, or other matters at the present time due to the very real risk of serious injury or perhaps death relating to the stress involved in such proceedings.

(Affidavit of James G. Piros, ¶¶ 4–5).

Based upon prior discussions between Plaintiff Linda Frideres and her sister, Ruth VanderLinden, Linda Frideres believes that Ruth VanderLinden has essential information that would support and/or corroborate her claims in this litigation. At one time Ruth VanderLinden was a "friendly" witness for Linda Frideres. Due to a family incident, not relevant to the issue of this protective order, Ruth VanderLinden is no longer cooperative regarding Linda Frideres' claims. Indeed, she has not responded to either telephone calls or letters from Linda Frideres' counsel.

## III. *LEGAL ANALYSIS*

The starting point for determining whether or not a protective order should issue is Federal Rule of Civil Procedure 26(c). Federal Rule of Civil Procedure 26(c) provides:

Upon motion by a party or the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order where justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time and place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or

be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit such discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

■ The party or person seeking a protective order bears the burden of making the "good cause" showing that the information being sought falls within the scope of Rule 26(c), and that she will be harmed by its disclosure. *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 954 n. 5 (8th Cir.), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Smith*, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *see General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir.1973), *cert. denied*, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

■ The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C.1991). *See also Gulf Oil v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981). This requirement "furthers the goal that the Court only grant as narrow a protective order as is necessary under the facts." *Brittain*, 136 F.R.D. at 412.

*Federal Rule of Civil Procedure* 26(c) authorizes entry of a protective order upon a party or by the person from whom discovery is sought when good cause is shown. " 'Good cause' exists, according to Rule 26(c), when justice requires the protection of 'a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense.' " *United States v. Miracle Recreation Equipment Co.*, 118 F.R.D. 100, 104 (S.D.Iowa 1987). The courts have imposed a balancing test in determining whether good cause has been shown. *See Farnsworth v.*

*Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277–78 (7th Cir.1982).

■ Protective orders prohibiting depositions are rarely granted. *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C.1987); *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition."); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *In re McCorhill Publishing, Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y.1988) ("A prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order."); *see also* 8 Wright & Miller, *Federal Practice and Procedure* § 2037 (1986 Supp.)

■ Ruth VanderLinden relies on three decisions which she believe support her view that a protective order should issue preventing her deposition. They are: *In re McCorhill Publishing, Inc.*, 91 B.R. 223 (Bankr. S.D.N.Y.1988); *Medlin v. Andrew*, 113 F.R.D. 650 (M.D.N.C.1987); and *Motsinger v. Flynt*, 119 F.R.D. 373 (M.D.N.C.1988).

In *Medlin*, the court held that a letter from the plaintiff's psychiatrist opining that the plaintiff could not be deposed without presenting a risk of further deterioration and perhaps hospitalization while justifying "a brief stay" was insufficient to grant a substantial or permanent stay of the deposition. *Medlin*, 113 F.R.D. at 652–53. Indeed, the court observed:

In granting a Rule 26(c), Fed.R.Civ.P., protective order prohibiting a deposition, the Court may not abdicate its responsibility by unquestioningly accepting a doctor's summary opinions. The opposing party has a right for itself and on behalf of the Court to examine the matter in more detail. (That is necessarily true in this case where plaintiff has put her health in issue.)

The Court finds that the brief and conclusory doctor's certificate is not sufficient to obtain a blanket ninety-day protective order against her deposition. In order to resolve this dilemma, the Court will give plaintiff a temporary protective order against her deposition within which time plaintiff shall make her physicians or psychiatrist available to defendants and for examination, if necessary. Prior to the end of the thirty-day period, plaintiff may renew her motion for a continuation of the protective order by coming forward with specific evidence from her doctors supporting that position, at which time, defendants should be situated to accede to the request or challenge it on the basis of the information gathered during the thirty-day period. To the extent sensitive information is sought, the parties may wish to consider agreeing to some type of protective order against public disclosure.

In *Motsinger,* 119 F.R.D. at 378, the court followed the same approach as that in *Medlin.*[3] In *In re McCorhill Publishing, Inc.,* 91 B.R. 223 (Bankr.S.D.N.Y.1988) the court granted a protective order because the oral deposition posed a threat to not only the witness' health, but his life as well. The court held:

> This court is not prepared to assume the responsibility of subjecting Mr. Kraus to a life-threatening deposition simply on the statement of McCorhill's attorney that he has no intention of pressuring Mr. Kraus with questions if it appears that Mr. Kraus is incapable of furnishing any information. In the event that Mr. Kraus suffers a heart attack or other life-threatening seizure as a result of an oral deposition, no amount of subsequent apologies or statements of sorrow will compensate for the known risk, especially since the only medical testimony in this case reflects the fact that Mr. Kraus' life will be placed in jeopardy by exposing this infirm and senile 80 year old man to a pre-trial deposition. Mr. Kraus is in constant pain and has reached a vegetative state of senile dementia. Dr. Athos testified that during such a deposi-

tion Mr. Kraus' borderline compensation may be catapulted into heart failure as a result of the pain and aggravated state which Mr. Kraus achieves when he cannot remember incidents in his life. At this point in Mr. Kraus' life, the issue for the court is not his competency to testify, but his ability to survive an oral deposition.

> Accordingly, KTO's motion for a protective order precluding the pre-trial oral deposition of Mr. Kraus is granted.

*In re McCorhill Publishing, Inc.,* 91 B.R. at 225.

Based upon the above decisions, the court grants Ruth VanderLinden's Motion to Quash Subpoena and Request for Protective Order subject to the following conditions:

1) The protective order shall remain in full force and effect and no party may depose Ruth VanderLinden until further order of this court.

2) The Plaintiffs shall have an opportunity to take the deposition of Drs. Gibson and Piros. Counsel shall cooperate in the scheduling of these depositions.

3) Ruth VanderLinden shall execute a patient's waiver or, in the alternative, shall authorize her counsel to provide copies of all relevant medical records to counsel for Plaintiffs and Defendants prior to the depositions of Drs. Gibson and Piros.

4) Following the depositions of Drs. Gibson and Piros, any party may move for relief from this protective order and, if requested by a party, a hearing will be held.

The court understands that on June 9, 1993, United States District Court, Northern District of Iowa, Chief Magistrate Judge John A. Jarvey granted a protective order that Ruth VanderLinden's deposition shall be taken in the presence of counsel only. Of course, that ruling was prior to Ruth VanderLinden obtaining counsel and prior to the filing of the present Motion for Protective Order. In any event, the court was informed by counsel at the telephonic hearing that all

---

**3.** The court notes that both the decision in *Medlin* and *Motsinger* were decided by United States

Magistrate Judge Russell A. Eliason.

counsel considered that ruling moot because the request for a protective order to take the deposition in the absence of the parties was withdrawn prior to the issuance of Judge Jarvey's ruling.

Notwithstanding the posture of Judge Jarvey's ruling, this court would be interested in Drs. Gibson and Piros' opinions as to whether a deposition without the parties present would substantially reduce or eliminate the health risks considered by the doctors. There is support for the proposition that depositions may be taken even in the absence of parties.

The leading treatise on evidence has noted: "FRCP 26(c)(5) has long recognized the utility of excluding witnesses in the context of depositions in civil cases." 3 Lousell, *Federal Evidence* 370 at 596 (footnote omitted). Lousell notes that "[e]xcluding witnesses serves two main purposes. The first is to prevent the testimony of one witness from being tailored by what he hears in the testimony of another.... The second reason is to assist the parties in detecting error or falsehood by the witnesses...." *Id.* at 595–96 (citations omitted).

Sequestering witnesses to assist in ascertaining truth is at least as old as the Bible. In the Biblical story of Susanna and the Elders, Daniel exposed falsehood by insisting that the two accusers separately describe the place where the alleged adultery occurred. When the two described different places, Susanna was belatedly released. *Daniel* 13:36–64 (King James). Daniel's technique of sequestering witnesses is now codified in Federal Rule of Evidence 615 and well recognized in the case law.

The purposes and policies underlying the sequestration of witnesses was stated in *Dunlap v. Reading Co.,* 30 F.R.D. 129, 131 (E.D.Pa.1962), as follows: "At the least, it will make available the raw reactions and the individual recollection of each witness unaided by the stimulation of evidence of any other witness." In *Queen City Brewing Co. v. Duncan,* 42 F.R.D. 32, 33 (D.Md.1966), the court recognized the underlying purpose of sequestration as follows: "Defendant's pur-

pose in seeking the order is to secure the independent recollection of each deponent without that recollection having been influenced, properly or improperly, by the depositions previously taken."

■ Furthermore, it is clear that the court clearly has the power to exclude even a party. In *Galella v. Onassis,* 487 F.2d 986 (2d Cir.1973), the court stated:

Circumstances of a deposition may be governed by the court's protective order. The court may order that "discovery be conducted with no one present except persons designated by the court." Fed.R.Civ.P. 26(C). The extent of the court's authority to determine those present was enlarged by the 1970 revision of the Rules of Discovery. Prior to the revision, Rule 30(b) allowed the court to order discovery to be conducted "with no one present except the parties to the action and their officers or counsel...." In view of the revision, it is clear that the court has the power to exclude even a party, although such an exclusion should be ordered rarely indeed.

*Galella,* 487 F.2d at 997 (footnote omitted).[4]

In *Beacon v. R.M. Jones Apartment Rentals,* 79 F.R.D. 141 (N.D.Ohio 1978), the court utilized Federal Rule of Civil Procedure 26(c)(5) to enter an order sequestering various defendants and corporate officials in a Title VII housing discrimination action. The court noted:

It is clear that under Rule 26(c)(5) the Court has the authority to limit who may attend depositions even to the exclusion of parties to the suit. 4 *Moore's Federal Practice* 2673 (2d ed. 1976). It is the opinion of the Court that in a Title VII housing discrimination action the subtle and sophisticated questions of whether the defendants have engaged in unlawful discriminatory housing practices presents good cause for the entry of such an order. Questions of credibility are inherent in such actions, and this route, which is the equivalent of an order of separation of witnesses, made routinely in trials, will

---

4. *See also Metal Foil Prod. Mfg. Co. v. Reynolds Metal Co.,* 55 F.R.D. 491 (E.D.Va.1972).

permit the greatest opportunity for evaluation of the testimony secured.

*Beacon,* 79 F.R.D. at 141–42.

The court takes no position, at this posture of the proceedings, as to whether there will even be a deposition of Ruth VanderLinden, and if there is one, whether the parties will be allowed to attend. However, the court believes that everyone connected with this action would be well-served by exploring the effects of alternatives to traditional depositions on Ruth VanderLinden with Drs. Gibson and Piros. This is a highly unusual matter and in order to protect the parties' right to potentially valuable information and Ruth VanderLinden's health—may require equally unusual and creative solutions.[5]

**IT IS SO ORDERED.**

---

5. As of the filing of this opinion, the court has been unable to contact either Chief Magistrate Judge Jarvey or Judge O'Brien regarding an extension of the August 15th discovery deadline. The undersigned will continue to make efforts to contact either Judge O'Brien or Judge Jarvey and is confident they will concur in my assessment that this deadline must be extended in light of today's hearing and this order and will enter an order to that effect.