**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 19, 2012**

# In the Court of Appeals of Georgia

A12A1115. GALBREATH v. BRALEY.

RAY, Judge.

In this custody modification proceeding, James Galbreath appeals from the trial court's order granting a motion to quash and issuing a protective order prohibiting him from deposing K. W., a 13-year old female child that he was accused of molesting. Finding that the trial court should consider other alternatives before prohibiting entirely the deposition from going forward, we vacate the protective order and remand this case for further consideration by the trial court.[1]

---

[1] See *Bd. of Regents of the Univ. System of Ga. v. Ambati*, 299 Ga. App. 804, 810 (4) (685 SE2d 719) (2009) (the grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, and this Court will not interfere with the trial court's exercise of its discretion absent clear abuse).

The record shows that following a divorce in March 2011, Galbreath and Amy Braley were granted joint legal custody of their son, with the mother having primary physical custody. In October 2011, the mother filed a petition for modification of the custody agreement and for an emergency suspension of Galbreath's visitation rights, alleging that "while [his son] was present for visitation with [Galbreath], [Galbreath] kissed, fondled and touched a female minor child [K. W.] who was staying at a sleepover at [his] home." Galbreath sought to take a videotaped deposition of K. W. in connection with these allegations, but K. W.'s parents, as non-parties, filed a motion to quash and for a protective order.

In support of their motion, K. W.'s parents filed the affidavit of Krista L. Barker, a licensed clinical social worker who had treated K. W. during several trauma-focused therapy sessions. In the affidavit, Barker states that K. W. had a history of mistreatment during her early childhood, that she was frail, and that she exhibited symptoms of post-traumatic stress disorder, depression, and age regression dissociative behavior. Because of these symptoms, Barker opined that K. W. "is at extreme risk for her psychological and emotional safety if exposed to any significant stressor" and that K. W. had "specifically identified James Galbreath as a trigger for psychological distress and physiological reactivity."

2

In its order granting the motions to quash and for a protective order, the trial court correctly found that there is no Georgia case law addressing whether a minor child must, in a civil case in which she is not a party, submit to a deposition despite expert testimony indicating that the child could be harmed by the taking of the deposition. The trial court then turned to case law from other jurisdictions, finding that when considering whether a protective order should be granted in similar situations, other jurisdictions have "balanced the relevance and importance of the child's testimony with the potential that the child will be harmed." The foreign jurisdictions declined to grant the requested protective order, instead imposing restrictions on the deposition in order to limit harm to the child.[2]

---

[2] *Graham v. City of New York*, 2010 WL 3034618, *5 (B) (2) (E.D.N.Y. 2010) (reversing trial court's grant of protective order prohibiting deposition of six-year-old child who witnessed police forcibly remove his father from car and allowing deposition to go forward if questioning proceeded "cautiously and sensitively"); *In re: Transit Mgmt. of Southeast Louisiana, Inc.*, 761 So.2d 1270 (La. 2000) (allowing deposition despite seven-year-old child's doctor and psychologist testifying that deposition would cause mental stress); *Kuyper v. Bd. of County Com'rs of Weld County*, 2010 WL 4038831 (D. Colo. 2010) (allowing defendants to depose seven-year-old child about sexual abuse she sustained while in foster care, despite expert testimony that such questioning could harm the child, so long as reasonable restrictions were imposed on the manner in which she was deposed); *Gray v. Howlett Lumber Co.*, 2007 WL 2705748 (4) (Mass. Super. 2007) (allowing deposition of ten-year old despite testimony from child's counselor that such questioning could harm the child, so long as reasonable restrictions were imposed upon the deposition).

The trial court in the instant case, however, while performing a balancing test, decided to grant the requested protective order instead of imposing restrictions on the deposition. The trial court specifically found that although K. W.'s testimony was both "relevant and highly important" to Galbreath in his efforts to defend against the allegations of his ex-wife in the custody case, the potential harm that K. W. might suffer by submitting to a deposition scheduled only two weeks after the alleged abuse, and the fact that neither K. W. nor her parents were parties to the instant litigation, outweighed Galbreath's interest in her testimony.

In his sole enumeration of error, Galbreath contends that the trial court abused its discretion in granting the motion for a protective order, thereby prohibiting the deposition of K. W. under any circumstance. We agree.

Neither the trial court's order nor the appellee has pointed to, and we have not been able to locate, a case where a litigant was prohibited *entirely* from conducting a deposition aimed at seeking information necessary to a party's case.[3] It is well-settled that parties to a lawsuit "may obtain discovery regarding any matter, not

---

[3] All of the cases cited by the trial court's order held that minor children could be deposed, even in the light of expert testimony indicating that submitting to a deposition could potentially harm the minor child, provided that adequate restrictions were imposed upon the deposition process. See Footnote 2, supra.

privileged, which is relevant to the subject matter involved in the pending action."[4] Further, "the courts of this State have long recognized the overriding policy of liberally construing the application of the discovery law. To hold otherwise would be to give every litigant an effective veto of his adversaries' attempts at discovery."[5]

Regarding protective orders, OCGA § 9-11-26 (c) authorizes the trial court "[u]pon motion by a party or by the person from whom discovery is sought and for good cause shown, . . . [to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The statute then provides for several remedies available to the movant, including, inter alia, that the discovery be limited in certain ways or that the discovery may not be had.[6] Although "[t]he issuance of a protective order is a recognition of the fact that in some circumstances the interest in gathering information must yield to the interest in protecting a party,"[7] protective orders should not be awarded "when the effect is

---

[4] OCGA § 9-11-26 (b) (1).

[5] (Citations and punctuation omitted.) *McKesson HBOC, Inc. v. Adler*, 254 Ga. App. 500, 505 (3) (562 SE2d 809) (2002).

[6] OCGA § 9-11-26 (c) (1) - (8).

[7] (Punctuation and footnote omitted.) *Bd. of Regents of the Univ. System of Ga.*, supra at 811 (4) (a).

to frustrate and prevent legitimate discovery."[8] Further, this Court has held that "protective orders are intended to be protective -- not prohibitive -- and, until such time as the court is satisfied by substantial evidence that bad faith or harassment motivates the discoveror's action, the court should not intervene to limit or prohibit the scope of pretrial discovery."[9]

In the present case, the trial court found, as do we, that K. W.'s testimony is clearly relevant to Galbreath's efforts to defend against his ex-wife's allegations and to protect his substantial interest in maintaining his rights of visitation. Georgia "has a strong policy in favor of allowing a divorced parent continuing contact with his or her child so long as the parent has demonstrated the ability to act in the child's best interest."[10] Accordingly, Georgia courts "will not deny a parent all visitation rights absent exceptional circumstances in which there is reasonable probative evidence that the parent is morally unfit."[11] We can assume that allegations of sexual abuse would

---

[8] (Citation and punctuation omitted.) *Intl. Svc. Ins. Co. v. Bowen*, 130 Ga. App. 140, 144 (202 SE2d 540) (1973).

[9] (Citation and emphasis omitted.) *McKesson HBOC, Inc.*, supra at 505 (3).

[10] (Citation and footnote omitted.) *Mitchum v. Manning*, 304 Ga. App. 842, 843 (698 SE2d 360) (2010).

[11] (Citation and punctuation omitted.) Id.

strongly weigh in favor of a potential finding that Galbreath is morally unfit to continue to have visitation rights with his child. Therefore, we find premature the trial court's award of a protective order preventing, now and forever, the deposition of K. W. in any form from going forward, such that it prevents and frustrates Galbreath's legitimate discovery requests.

Accordingly, we vacate the protective order and remand the case to the trial court so that it might reconsider whether and to what extent the deposition of K. W. may go forward without exacerbating any psychological harm that might have occurred due to the alleged molestation. Specifically, the trial court should consider allowing the deposition while imposing reasonable restrictions upon the method by which she might be deposed.[12] In addition to the protective measures outlined in OCGA § 9-11-26 (c) (2) - (6),[13] the trial court should consider the following factors

---

[12] See OCGA § 9-11-26 (c) (2) - (6). See *Gray*, supra at (4) for factors courts could consider when setting appropriate restrictions on deposing a minor.

[13] OCGA § 9-11-26 (c) provides that the trial court

may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place; . . . (4) That certain matters may not

when imposing restrictions on how the deposition might proceed: (1) where the deposition is held; (2) the length of the deposition; (3) who shall be present at the deposition (e.g., K. W.'s mother or counselor); (4) the possibility of breaks as necessary to accommodate K. W.'s reasonable needs; (5) the option to suspend the deposition in the event of an emergency; (6) previewing the questions to be asked at the deposition; and (7) the taking of K. W.'s deposition remotely via audio visual means.

Further, as to the trial court's conclusion that a material distinction exists between this case and others insofar as neither K. W. nor her parents are parties to the instant action, we disagree. This Court has expressly declined to recognize any distinction in the scope of discovery between parties and nonparties, so long as the discovery sought is specifically related to the cause of action.[14]

---

be inquired into or that the scope of discovery may be limited to certain matters; (5) That discovery be conducted with no one present except persons designated by the court; [and] (6) That a deposition, after being sealed, be opened only by order of the court.

[14] See *Sechler Family Partnership v. Prime Group, Inc.*, 255 Ga. App. 854, 856 (2) (567 SE2d 24) (2002).

*Judgment vacated and case remanded with direction. Miller, P. J., and Branch,*

*J., concur.*