June 10, 2019

**Supreme Court**

No. 2017-309-M.P.
(KC 16-1239)

Estate of Brian Chen et al.          :

v.          :

Lingting Ye et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Estate of Brian Chen et al.      :

v.      :

Lingting Ye et al.      :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** The plaintiffs, Brooke Chen, Wei Chen, Yifan Shuai, and the Estate of Brian Chen, seek review of an order entered in the Superior Court that quashed the oral deposition of M.Y., the minor daughter of the defendants, Lingting Ye and Yan Sun.[1] Before this Court, the plaintiffs argue, *inter alia*, that the hearing justice erred because, instead of prohibiting the oral deposition outright, he should have allowed it to continue under reasonable restrictions that would limit any potential harm to the minor child, who suffers from generalized anxiety, while still preserving the plaintiffs' right to relevant discovery. For the reasons set forth in this opinion, we quash the order of the Superior Court.

## I

### Facts and Travel

On June 18, 2016, in East Greenwich, Rhode Island, seven-year-old Brian Chen tragically drowned in a swimming pool while he was attending a party at defendants' home.

---

[1] We have referred to the defendants' two minor children by their initials, M.Y. and C.Y., in an effort to protect their privacy.

Although the parties agree that there were several adult guests present at the time, it is in dispute whether any adult was present outside near the pool area when the young boy drowned. The defendants point to decedent's father's deposition testimony that that there were ten to fifteen adults in the backyard and at least one child swimming in the pool when decedent's father left Brian in the backyard. The defendants further allege that there has been no evidence presented that would indicate that there were any children in the pool at the time when the young boy was found floating in the water. On the other hand, although plaintiffs agree that there were several adult guests present on the premises, they nonetheless contend that none of them were near the pool when the drowning incident occurred. Rather, they allege that defendants' then ten-year-old daughter, M.Y., and Brian were both in the pool area when the tragedy transpired.

In December 2016, plaintiffs filed a wrongful death action in Kent County Superior Court against defendants.[2] In their complaint, plaintiffs alleged that defendants' negligence caused the death of their son based on theories of attractive nuisance, failure to warn, failure to supervise, failure to secure the pool area, and premises liability. In addition to damages for wrongful death, plaintiffs also sought damages for negligent infliction of emotional distress, loss of consortium on their own behalf, and loss of consortium on their daughter's behalf.

In June 2017, plaintiffs sought to depose M.Y., defendants' minor daughter. The defendants filed a motion to quash the notice of deposition, arguing that M.Y. had mental health issues that both preceded and were as a result of her friend's death, and that she was actively in treatment for her mental health issues. To support their motion, defendants attached a letter from M.Y.'s psychotherapist, Aleta Johnson, LICSW, who indicated that M.Y. had been in treatment for generalized anxiety for several years, and that, since decedent's death, her symptoms had

---

[2] The plaintiffs filed an amended complaint in May 2017.

become exacerbated. Ms. Johnson also reported that, following Brian's death, M.Y. had "begun to also show signs of depression, [her] emotional regulation has been more difficult, and her distress has been more pronounced." The therapist recommended that M.Y. not be deposed because it would "certainly worsen her mental health, and may have negative and lasting consequences to her condition." The defendants further claimed that there was no reason to depose M.Y. because there were other guests at the party who were outside at the time of the incident.

The plaintiffs objected to defendants' motion to quash, arguing that M.Y. may well have been the sole eyewitness to the tragedy and that they "should be allowed to seek deposition testimony from what they consider a material witness who possesses information that is reasonably calculated to lead to relevant and discoverable evidence." The plaintiffs believed that M.Y.'s testimony would be important, noting that Brian's father had testified at his deposition that M.Y. had shouted "I'm sorry" immediately after the incident.

A justice of the Superior Court conducted a hearing on the discovery motion. After hearing arguments from both parties, the hearing justice at first decided that he would not stop the deposition from going forward or quash the subpoena, but "reserve[d] to the defendant[s] the right to stop the deposition from going forward at any time[.]" The defendants then suggested that the deposition be accomplished by means of written questions because, according to defendants, this would be less traumatizing for the child "instead of having the child go to a law office, sit down with a stenographer, with lawyers all around her."

The plaintiffs did not agree. They argued that the answers would not be prepared by the child and the "honesty and that spontaneity that the youth tend to deliver" would be lost through "interrogatories which will be guided by adults and by counsel[.]" The hearing justice observed

that "written deposition questions are provided for under the rule[,]" but he nonetheless reserved his decision.

After the parties filed post-hearing memoranda, the hearing justice issued a written order. The hearing justice first noted that "[a] mental health professional [h]as indicated the deposition would worsen the mental health of the child[,]" and he therefore ordered that the notice of oral deposition be quashed. The court also ordered that a deposition on written questions was "allowed in accord with the rules of civil procedure[,]" and required counsel to "draft age appropriate questions and avoid questions designed to 'ramp up' the emotions." Furthermore, the order stated that "[t]he witness shall not be asked about her counseling or any mental health treatment at this time[,]" and he required defense counsel to submit, every six months from the date of the order until the case resolved, a statement from a mental health professional indicating whether M.Y. was fit to be deposed. The court also reserved the right to review any questions to which objections were raised and to modify the order at any time.

The plaintiffs filed a petition for issuance of a writ of certiorari with this Court in August 2017; that petition was granted by this Court in December 2017.[3] In February 2018, plaintiffs filed a motion with this Court for a limited remand to depose C.Y., who is M.Y.'s younger brother; the limited remand was granted. The defendants then objected in Superior Court to C.Y.'s deposition based on another report by Ms. Johnson, eerily consistent with her report

---

[3] In the order granting plaintiffs' petition for issuance of a writ of certiorari, this Court permitted the parties to continue with discovery. In addition, before they filed their petition with this Court, plaintiffs had filed a notice of appeal from the hearing justice's order granting defendants' motion to quash. In this Court's order granting plaintiffs' petition in the present case, we also granted plaintiffs' motion to dismiss that appeal as procedurally inappropriate.

regarding M.Y., that C.Y. should not be deposed because he was also being treated and that his condition might be compromised by a deposition.[4]

In their briefs to this Court, plaintiffs contend that, in July 2018, they deposed the mother of C.Y. and M.Y. and, according to plaintiffs, she testified that both C.Y. and M.Y. had been in the pool with Brian and some other minor children. The plaintiffs also aver that she also testified that, shortly thereafter, the children left Brian unattended at or in the pool just before he drowned. In that same month, plaintiffs issued a deposition subpoena *duces tecum* for Ms. Johnson, requiring her to appear and produce all records pertaining to the treatment of several of her patients, including C.Y. and M.Y. Not surprisingly, defendants filed a motion to quash that subpoena as well, and that motion was granted by the Superior Court, without prejudice, subject to our decision on the petition before us at this time.

## II

### Standard of Review

"It is well settled that 'our review of a case on certiorari is limited to an examination of the record to determine if an error of law has been committed.'" *Sandy Point Farms, Inc. v. Sandy Point Village, LLC*, 200 A.3d 659, 662 (R.I. 2019) (brackets omitted) (quoting *DeCurtis v. Visconti, Boren & Campbell, Ltd.*, 152 A.3d 413, 420-21 (R.I. 2017)). "In conducting such a review we do not weigh the evidence on certiorari, but only conduct our review to examine questions of law raised in the petition." *Id.* (brackets omitted) (quoting *Cashman Equipment Corporation, Inc. v. Cardi Corporation, Inc.*, 139 A.3d 379, 381 (R.I. 2016)). "Like questions of statutory construction, the interpretation of court rules of procedure is a legal question for the court." *Plante v. Stack*, 109 A.3d 846, 853 (R.I. 2015) (quoting *McDonough v. McDonough*, 962

---

[4] The record appears to reflect that plaintiffs' efforts to compel the deposition of C.Y. were passed in the Superior Court.

A.2d 47, 54 (R.I. 2009)). "However, 'in granting or denying discovery motions, a Superior Court justice has broad discretion,' which 'this Court will not disturb save for an abuse of that discretion.'" *State v. Lead Industries Association, Inc.*, 64 A.3d 1183, 1191 (R.I. 2013) (brackets and deletion omitted) (quoting *Colvin v. Lekas*, 731 A.2d 718, 720 (R.I. 1999)).

### III

### Discussion

Before this Court, plaintiffs argue that M.Y. may be a percipient witness, perhaps the sole percipient witness, to the drowning incident and that the order of the Superior Court prohibiting her oral deposition is in error. The plaintiffs contend that the hearing justice erred when he quashed the oral deposition of M.Y., arguing that: (1) he ignored the jurisprudence of other courts, in situations similar to that before us, in which restrictions have been imposed to limit harm to a child being deposed while still protecting plaintiffs' right to relevant discovery; (2) he failed to make any findings in line with the criteria set forth in Rule 26(c) of the Superior Court Rules of Civil Procedure; (3) he failed to make a specific and documented factual showing that a deposition would be threatening to the deponent's life and health, as defined by caselaw interpreting Rule 26(c); (4) there was no showing that Ms. Johnson conducted a forensic psychiatric evaluation or that she had the training necessary to conduct a proper forensic psychiatric evaluation; and (5) he violated plaintiffs' "right to a fair hearing, fair procedure, and a fair trial," which prevented plaintiffs from obtaining discovery from a material witness in a timely fashion.[5]

Rule 26(c) provides, in pertinent part:

---

[5] The defendants attached Ms. Johnson's letter to their motion to quash the deposition of M.Y. That letter was discussed at the hearing on the motion and, although plaintiffs challenged the weight that should have been ascribed to the letter, the record does not reflect that plaintiffs objected to the letter being considered by the hearing justice.

"Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

"(1) That the disclosure or discovery not be had;

"(2) That the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

"(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

"(4) That certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

"(5) That discovery be conducted with no one present except persons designated by the court;

"* * *.

"In ruling on a motion for a protective order the court may, on such terms and conditions as are just, order that any party or other person provide or permit discovery."[6]

This Court has yet to define "good cause" as set forth under Rule 26(c). However, we previously have held that "where the federal rule and our state rule of procedure are substantially similar,

---

[6] We observe that, in their motion to quash M.Y.'s notice of deposition, defendants indicated that they informed plaintiffs of the reasons as to why they contested the deposition, but that plaintiffs "noticed the deposition nonetheless." Although we express concern that that interaction may not have satisfied the prerequisite in Rule 26(c) of the Superior Court Rules of Civil Procedure that the movant must provide a certification that he or she "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action," none of the parties addressed that issue in the lower court or before this Court, and the hearing justice proceeded to address the arguments as to whether good cause had been shown to enforce a protective order.

we will look to the federal courts for guidance or interpretation of our own rule."[7] *Sandy Point Farms, Inc.*, 200 A.3d at 664 n.5 (quoting *Crowe Countryside Realty Associates, Co., LLC v. Novare Engineers, Inc.*, 891 A.2d 838, 840 (R.I. 2006)). The United States Court of Appeals for the First Circuit has held that "[a] finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). Other circuits have come to a similar conclusion, and we agree. *See In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011)

---

[7] Rule 26(c) of the Superior Court Rules of Civil Procedure nearly mirrors the language of Rule 26(c) of the Federal Rules of Civil Procedure, which provides, in pertinent part:

> "(1) *In General*. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending * * *. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
>> "(A) forbidding the disclosure or discovery;
>>
>> "(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>>
>> "(C) prescribing a discovery method other than the one selected by the party seeking discovery;
>>
>> "(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>>
>> "(E) designating the persons who may be present while the discovery is conducted;
>>
>> "* * *.
>
> "(2) *Ordering Discovery*. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."

("'[G]ood cause' * * * requires a showing 'that specific prejudice or harm will result' if the protective order is not granted.") (quoting *Foltz v. State Farm Mutual Automobile Insurance Company*, 331 F.3d 1122, 1130 (9th Cir. 2003)); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test."). The movant has the burden to make a specific demonstration of necessity for the protective order. *Anderson*, 805 F.2d at 7 (citing *General Dynamics Corporation v. Selb Manufacturing Company*, 481 F.2d 1204, 1212 (8th Cir. 1973)); *see also In re Deutsche Bank Trust Company Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("A party seeking a protective order carries the burden of showing good cause for its issuance.").

We also have the benefit of the jurisprudence of our sister states. In *Galbreath v. Braley*, 733 S.E.2d 412 (Ga. Ct. App. 2012), the Court of Appeals of Georgia vacated a protective order prohibiting the petitioner from deposing a thirteen-year-old girl who was not a party to the case. *Galbreath*, 733 S.E.2d at 413. The parties were divorced and had been granted joint custody of their son. *Id.* The respondent filed suit and argued that the petitioner's visitation rights to his son should be suspended on the grounds that the petitioner allegedly had molested the thirteen-year-old girl. *Id.* The girl's parents moved for a protective order to prevent the petitioner from deposing their daughter, and they submitted an affidavit from the girl's therapist which said that the girl's psychological and emotional safety were "at extreme risk" if she were exposed to "any significant stressor[.]" *Id.* The therapist further attested that the girl "specifically identified [the petitioner] as a trigger for psychological distress and physiological reactivity." *Id.* Although the trial court recognized the importance of the girl's testimony, it nonetheless granted the protective

- 9 -

order, entirely prohibiting the deposition. *Id.* at 414. The court of appeals vacated the order and remanded the case to the trial court to determine whether and how the deposition could proceed without exacerbating the child's psychological harm. *Id.* at 415. The court suggested that the trial court consider imposing reasonable restrictions on the deposition, such as the venue of the deposition, its length, the possibility of recesses, those who might attend, and the ability to suspend the deposition in the event of an emergency. *Id.*

Similarly, in *In re Transit Management of Southeast Louisiana, Inc.*, 761 So. 2d 1270 (La. 2000), the plaintiffs brought suit against the defendant transit company after their minor daughter was injured when she fell from a window of a streetcar. *In re Transit Management of Southeast Louisiana, Inc.*, 761 So. 2d at 1271. The defendant sought to depose a non-party, a seven-year-old boy, who had witnessed the accident. *Id.* The headmaster and chaplain at the witness's school, as well as the witness's pediatrician and psychologist, all filed affidavits with the court, attesting that, if the child were to be deposed, he could suffer considerable mental stress as a consequence. *Id.* In response, the trial court issued a protective order prohibiting the defendant from deposing the child. *Id.* The Louisiana Supreme Court vacated the protective order, holding that, because the witness's testimony was relevant and not privileged in any way, it was therefore discoverable and that, on remand, the trial court "may consider alternative methods to reduce the level of stress to the child while at the same time preserving [the defendant's] right to obtain information necessary to its defense."[8] *Id.*

---

[8] We also note the following unpublished opinions, which we do not cite for precedential value, but which are nonetheless illustrative of the way in which courts have dealt with this issue. *Arassi v. Weber-Stephen Products LLC*, 2014 WL 1385336, at *2, *3 (E.D. Wis. 2014) (permitting defendant to depose plaintiffs' non-party minor daughters, despite a letter written by the daughters' therapist indicating the potential harm to their mental health if deposed, but imposing subject and time restrictions on the depositions); *Graham v. City of New York*, 2010 WL 3034618, at *5 (E.D.N.Y. 2010) (reversing trial court's protective order prohibiting the

Because it was defendants who filed a motion to quash plaintiffs' notice of M.Y.'s deposition, it was their burden to prove that good cause existed. Courts in the foregoing cases were required, as we must do here, to balance the competing interests between a party's right to discover relevant and nonprivileged information that may be pertinent to his or her case or defense and the harm that may be caused to the deponent if such a deposition were to take place. Nonetheless, a review of the relevant caselaw makes it very clear that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Company*, 593 F.2d 649, 651 (5th Cir. 1979). Instead, courts tend to allow the deposition to go forward, but impose reasonable restrictions to minimize harm to the deponent while preserving a party's right to relevant discovery.

Here, the hearing justice did not completely quash M.Y.'s deposition; instead, he disallowed an oral deposition, but permitted plaintiffs to depose M.Y. via written questions "in accord with the rules of civil procedure." The hearing justice also required defense counsel to submit a statement from a mental health professional every six months indicating whether M.Y. was fit to be deposed orally. The question before us, then, is whether that restriction imposed on plaintiffs' efforts to depose M.Y. is reasonable. In our opinion, it is not.

At the outset, it cannot be denied that "an oral deposition has the advantage of allowing cross-examination of an evasive, recalcitrant, or hostile witness." 8A Wright & Miller, *Federal*

deposition of a seven-year-old non-party because the contention that the child would become "unnecessarily upset" if deposed was speculative and defense counsel had assured the court that he would depose the child "cautiously and sensitively"); *Kuyper v. Board of County Commissioners of Weld County*, 2010 WL 4038831, at *2 (D. Colo. 2010) (allowing defendants to depose a seven-year-old plaintiff about alleged sexual abuse that she sustained while in foster care, notwithstanding expert testimony indicating that such questioning could cause substantial harm to the child, so long as there were reasonable restrictions on the manner in which the child was deposed).

*Practice and Procedure*: Civil § 2039 at 190 (2010); *see also Alliance to End Repression v. Rochford*, 75 F.R.D. 428, 429 (N.D. Ill. 1976) ("Without doubt, oral deposition is preferable to written interrogatories when dealing with a recalcitrant or hostile witness."). We agree with plaintiffs that an oral deposition also provides the party conducting the deposition with the opportunity to not only ask questions of the deponent in person, but to evaluate the deponent's credibility, spontaneity, and demeanor when he or she provides responses. Such opportunities may be lost when a party is required to conduct a written deposition. *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 n.2 (2d Cir. 2003) ("District courts have also typically treated oral depositions as a means of obtaining discoverable information that is preferable to written interrogatories."); *National Life Insurance Company v. Hartford Accident and Indemnity Company*, 615 F.2d 595, 600 n.5 (3d Cir. 1980) ("[T]here are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses."); *Zito v. Leasecomm Corporation*, 233 F.R.D. 395, 397 (S.D.N.Y. 2006) ("Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation."); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549-50 (S.D.N.Y. 1989) (noting "several reasons why oral depositions should not be routinely replaced by written questions[,]" including the ability to ask follow-up questions, "observe the demeanor of the witness and evaluate his [or her] credibility in anticipation of trial[,]" and to avoid the "opportunity for counsel to assist the witness in providing answers so carefully tailored that they are likely to generate additional discovery disputes").

We are of the opinion that good cause was not demonstrated to a sufficient degree in this case for the hearing justice to impose such a drastic restriction on plaintiffs' right to depose M.Y. In quashing the oral deposition, but allowing the witness to be examined through the use of written questions, the hearing justice appears to have relied heavily upon Ms. Johnson's letter. That correspondence, addressed to one of M.Y.'s parents, says in its entirety:

> "Dear Yan,
>
> "This letter comes to you to document the mental health of your daughter, [M.Y.], and as it is being provided directly to you, you may share it at your discretion.
>
> "Your daughter [M.Y.] has been in treatment with me for Generalized Anxiety for the past several years. Since last summer, following the loss of the family friend, symptoms have been exacerbated. She has begun to also show signs of depression, emotional regulation has been more difficult, and her distress has been more pronounced. In learning that [M.Y.] may be deposed for the legal proceedings around the incident, I am providing this letter, to recommend that [M.Y.] not be deposed. Deposing [M.Y.] will certainly worsen her mental health, and may have negative and lasting consequences to her condition.
>
> "Sincerely,
>
> "Aleta Johnson, LICSW"

It is true that Ms. Johnson's letter contains specific statements about M.Y.'s mental health both before and after decedent's death. However, the letter is conclusory with respect to the potential harm that could result if M.Y. were to be deposed. Specifically, the only reference to potential harm that Ms. Johnson reports is "[d]eposing [M.Y.] will certainly worsen her mental health, and *may* have negative and lasting consequences to her condition." (Emphasis added.) That finding does not provide "a particular factual demonstration of potential harm" to M.Y. if she were to be deposed. *Anderson*, 805 F.2d at 7; *see Campos v. Webb County Texas*, 288 F.R.D. 134, 135, 136, 137 (S.D. Tex. 2012) (holding that doctor's statement was conclusory when he averred that, by

- 13 -

participating in a deposition, plaintiff, who suffered from major depression, post-traumatic stress disorder, and was mildly developmentally disabled, would "very likely * * * decompensate into a full blown psychotic regression"); *Jennings v. Family Management*, 201 F.R.D. 272, 275 (D.D.C. 2001) (holding that psychologist's report, which stated that plaintiff "faces a 'danger of exacerbating her symptoms of dementia and depression' if she is made to testify," was conclusory because it "[did] not state with specificity how or why this [would] happen" and did not specify how her health would be threatened by the adversarial process).[9]

The defendants cite to four cases that they maintain support their proposition that the oral deposition was appropriately quashed because the proposed deponent was not a party to the case. *See Fonner v. Fairfax County, Virginia*, 415 F.3d 325 (4th Cir. 2005); *Dunford v. Rolly Marine Service Co.*, 233 F.R.D. 635 (S.D. Fla. 2005); *Frideres v. Schiltz*, 150 F.R.D. 153 (S.D. Iowa 1993); *In re McCorhill Publishing, Inc.*, 91 B.R. 223 (Bankr. S.D.N.Y. 1988). Although we agree that those cases, like the one before us, pertain to deposing non-party witnesses, a review of those cases reveals that the deponents were subject to life-threatening or other serious

---

[9] It deserves mention that, in cases where a motion to quash a deposition had been filed based on the potential harm that it could cause to the deponent, the deponent's evidence of potential harm was presented to the court either by affidavit or sworn testimony. *See, e.g., Campos v. Webb County Texas*, 288 F.R.D. 134, 135 (S.D. Tex. 2012) (deponent's treating psychiatrist filed an affidavit); *Galbreath v. Braley*, 733 S.E.2d 412, 413 (Ga. Ct. App. 2012) (treating licensed clinical social worker filed an affidavit); *In re Transit Management of Southeast Louisiana, Inc.*, 761 So. 2d 1270, 1271 (La. 2000) (headmaster and chaplain at deponent's school and deponent's pediatrician and clinical psychologist filed affidavits); *In re Toyota Motor Corporation*, 191 S.W.3d 498, 501 (Tex. App. 2006) (treating psychiatrist testified at a hearing on a motion to quash deposition notices). Here, Ms. Johnson did not testify at the hearing on the motion to quash M.Y.'s deposition notice, and her statement is an unsworn letter addressed to one of M.Y.'s parents. Significantly, however, although plaintiffs challenge the weight that should be ascribed to the letter, it was attached to defendants' motion to quash the deposition of M.Y. and discussed at the hearing on that motion, but the propriety of the hearing justice's consideration of the document was never challenged. *But see Dunford v. Rolly Marine Service Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005) ("A 'doctor's note' was clearly not sufficient to support the very heavy burden on [the movant] and Defendant to prevent a deposition from taking place altogether.").

conditions that would have been significantly exacerbated had the deposition not been quashed. *See Fonner*, 415 F.3d at 327, 331 (deponent was developmentally disabled, his "opinions and beliefs could be changed by the suggestion of others[,]" and a deposition would cause deponent to become "emotionally over-whelmed and traumatized[,] * * * would likely trigger a relapse of previous symptoms and problematic behaviors[,]" and would "greatly interfere with [deponent's] functioning in daily life"); *Dunford*, 233 F.R.D. at 636, 637 (deponent "suffer[ed] from a potentially life-threatening and severely disabling brain disorder"; deponent had "remained in intensive care at the hospital for some time"; and had "the medical condition in question [been] only general and non-acute, then the heavy good cause requirement may not have been established"); *Frideres*, 150 F.R.D. at 155 (deponent suffered from a "life-threatening hemorrhage" and was diagnosed with inflammatory bowel disease, which could have been aggravated by emotional distress from a deposition); *In re McCorhill Publishing, Inc.*, 91 B.R. at 224 (deponent suffered from severe degenerative arthritis, renal disease, senile dementia, and Alzheimer's disease, his "mental condition had deteriorated rapidly and [he] was unable to function independently in his activities of daily living[,]" had suffered heart failure during the proceedings, and a doctor said that a deposition "could cause further heart failure which could threaten [his] life").[10]

We conclude that those cases are factually inapposite to the case at bar because, unlike those cases, where it was clear that life-threatening or other serious conditions would satisfy the

---

[10] Consistent with footnote 9, *supra*, in those four cases cited by defendants, affidavits or testimony were presented to the courts to support a finding of potential harm to the deponents if the motions to quash the deposition notices were denied. *See Fonner v. Fairfax County, Virginia*, 415 F.3d 325, 331 (4th Cir. 2005) (treating psychologist filed an affidavit); *Dunford*, 233 F.R.D. at 636 (treating physician filed an affidavit); *Frideres v. Schiltz*, 150 F.R.D. 153, 155 (S.D. Iowa 1993) (physician filed an affidavit); *In re McCorhill Publishing, Inc.*, 91 B.R. 223, 224 (Bankr. S.D.N.Y. 1988) (attending physician filed an affidavit and testified before the court at the hearing on the motion to quash the deposition notice).

good cause requirement under Rule 26(c), here, the evidence of potential harm to M.Y. was speculative and conclusory. In our view, defendants have not overcome their burden to demonstrate good cause as required under Rule 26(c). Therefore, it is our opinion that the hearing justice erred when he quashed M.Y.'s oral deposition and required plaintiffs to depose M.Y. via written questions "in accord with the rules of civil procedure." This case is therefore remanded to the Superior Court so that plaintiffs may conduct an oral deposition of M.Y. However, the hearing justice may impose reasonable restrictions on the oral deposition, such as setting a time limit on the deposition, allowing frequent recesses, and/or permitting a parent of M.Y. to be present during the deposition. *See Galbreath*, 733 S.E.2d at 415.[11]

## IV

### Conclusion

For the foregoing reasons, we quash the order of the Superior Court and remand the papers in this case to that court for further proceedings consistent with this opinion.

---

[11] Because we quash the order of the Superior Court on these grounds, we need not, and do not, reach plaintiffs' arguments that the hearing justice failed to make findings in line with the criteria set forth in Rule 26(c), that the hearing justice failed to make a specific and factual showing that the deposition was threatening to the deponent's life and health, that there was no showing that Ms. Johnson conducted a forensic psychiatric evaluation or that she had the training necessary to conduct such an evaluation, and that the hearing justice violated plaintiffs' rights to "a fair hearing, fair procedure, and fair trial[.]"

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Estate of Brian Chen et al. v. Lingting Ye et al. |
| **Case Number** | No. 2017-309-M.P.<br>(KC 16-1239) |
| **Date Opinion Filed** | June 10, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Ronald J. Resmini, Esq.<br>Andrew O. Resmini, Esq. |
| | For Defendants:<br><br>Mark P. Dolan, Esq.<br>Mark P. Dolan, Jr. |